[Crim. No. 46.   Department Two—February 20, 1896.]

THE PEOPLE, RESPONDENT, *v.* SIMON BENDIT,
APPELLANT.

CRIMINAL LAW — FORGERY — SIGNATURE OF RECEIPTED BILL AS AGENT
WITHOUT AUTHORITY—FALSE PRETENSES.—The signature of a receipted
bill, signed in the office of the debtor, by one fraudulently acting as col-
lector without authority, who signed the name of the creditor, in his
own handwriting, and appended initials thereto, to indicate that he
signed it as agent, without attempting to simulate the handwriting of
the creditor, is not an act of forgery, there being no false making or
counterfeiting of the instrument, but merely a false assumption of au-
thority and the obtaining of money under false pretenses.

ID.—DEFINITION OF FORGERY—SUBJECTS—COUNTERFEITING—FALSE MAK-
ING—CODE, HOW DIFFERING FROM COMMON LAW. — The code differs
from the common law as to the enumeration of what instruments are
the subjects of forgery; but does not differ from the common law as to
what constitutes forgery of instruments which are the subjects of forgery;
and to constitute such crime there must be a forging or counterfeiting,
which is the "false making or materially altering, with intent to defraud,
of any writing which, if genuine, might apparently be of legal efficacy,
or the foundation of a legal liability."

APPEAL from a judgment of the Superior Court of
the City and County of San Francisco. EDWARD A.
BELCHER, Judge.

The facts are stated in the opinion of the court.

*Walter S. Hinkle,* and *Henry H. Davis,* for Appellant.

Where one fraudulently executes and issues an instrument purporting on its face to be executed by him as agent of the principal therein named, he is not guilty of forgery, though he have no authority from the principal to execute the instrument. (5 Lawson's Defenses to Crime, 52; Desty's Criminal Law, sec. 150 a; 2 Archbold's Criminal Practice, sec. 819; *Regina* v. *White,* 2 Car. & K. 404; 2 Cox C. C. 210; *Mann* v. *People,* 15 Hun, 155; *Matter of Heilbonn,* 1 Park. C. C. 429; *State* v. *Willson,* 28 Minn. 52.)

*W. F. Fitzgerald, Attorney General,* and *Charles H. Jackson, Deputy Attorney General,* for Respondent.

McFARLAND, J.—The defendant was convicted of forgery, and appeals from the judgment and from an order denying a new trial.

The information charges that appellant on July 30, 1894, did unlawfully, feloniously, falsely, etc., and with intent to defraud, "make and forge a certain instrument in writing, in words and figures following, to wit:

"SAN FRANCISCO, July 30, 1894.

"G. W. HUME & Co.—William Cluff Company, wholesale grocers and provision dealers, 18 to 22 Front St., corner Pine.   Telephone 1819.

"To balance..................................$

"July 23.   To bill rendered................... 15 50

"Discount.... .......................... .... 30

$15 20 ·

"WM. CLUFF & Co.

"A. B."

It further charges (in brief) that on said July 30th he willfully, fraudulently, etc., passed the said instrument "as true and genuine," to one J. Deming, with intent to defraud G. W. Hume and J. Deming, doing business under the firm name of G. W. Hume & Co.   The instrument is admitted by appellant to be a receipt for

money, although there is nothing on its face which acknowledges such receipt.

We do not deem it necessary to consider the points made by appellant that the information is insufficient, and that material errors were committed by the court in rulings upon the admissibility of evidence, for in our opinion there was no evidence sufficient to establish the crime of forgery. There was a conflict of evidence as to whether appellant was the person who did the acts testified to by the witnesses for the prosecution; but assuming that plaintiff was identified as the person who did those acts, the acts themselves do not constitute the crime charged. The facts testified to were (in brief) these: The writing alleged to have been forged was sent by Wm. Cluff & Co. to Hume & Co. the day before July 30, 1894, so that the latter might examine it, and be ready to pay when the collector of the former should call for payment. It was then simply an unreceipted account with no name signed to it. On July 30th, according to the people's testimony, appellant went to the business place of Hume & Co., and asked J. Deming, one of the partners, for the payment of this account. Deming asked him the amount, and as he did not give the correct amount Deming refused to pay. Appellant said there must be some mistake, and that he would see about it, and went out. Deming testified: "I naturally thought he was a collector for them." Deming afterward went out himself, leaving Fannie A. Berry as acting cashier. Afterward appellant returned, and Miss Berry paid him the amount of the account, and appellant receipted it, by writing in the presence of Miss Berry, "Wm. Cluff & Co., A. B." She testified: "I saw him sign Wm. Cluff & Co. *per* A. B. I understood him to be the collector in the employ of the William Cluff Company, who came there to collect, and was authorized to collect the bill."

It is quite clear that the facts above stated do not constitute forgery. When the crime is charged to be the false making of a writing, there must be the mak-

ing of a writing which falsely *purports to be the writing of another*. The falsity must be in the writing itself— in the manuscript. A false statement of fact in the body of the instrument, or a false assertion of authority to write another's name, or to sign his name as agent, by which a person is deceived and defrauded, is not forgery. There must be a design to pass as the genuine writing of another person that which is not the writing of such other person. The instrument must fraudulently purport to be what it is not. And there was nothing of the kind in the case at bar. There was no pretense that "Wm. Cluff & Co." was the genuine signature of that firm. It was written by appellant himself in the presence of the party who paid the money; he added the initials A. B. to it; and he was understood to be acting as the agent of the firm, and to have written the name Cluff & Co. by himself as such agent. By these acts he may have committed some other crime, but he did not commit forgery.

We have been referred to no authorities to the point that the signing of another's name as his agent is forgery; while there is a multitude of authorities to the contrary in text-books and adjudicated cases. "If a man accept or indorse a bill of exchange in the name of another, without his authority, it is a forgery. But if he sign it with his own name, per procuration of the party whom he intends to represent, it is no forgery; it is no *false making* of the instrument, but merely a false assumption of authority." (2 Archbold's Criminal Practice, 819.) The doctrine is fully discussed, and the views hereinbefore stated declared, in *Regina* v. *White*, 2 Carr. 404. In that case the defendant brought a bill to a banker as from Tomlinson. The bill was not endorsed, but the defendant said he would indorse it. The banker wrote "per procuration Tomlinson," beneath which the defendant signed his own name. It was held that this false assumption of authority was not forgery, as there was *no false making*. It has frequently been held that "the false instrument should carry on

the face of it the semblance of that for which it is counterfeited," although it is not necessary that the semblance should be exact. (2 Archbold's Criminal Practice, 866.) This rule illustrates the nature of forgery. How in the case at bar could there be any question about "semblance"?

The American authorities are as pronounced on the subject as the English. In the *Matter of Heilbonn*, 1 Park. C. C. 434, the court, after having referred to other cases, say: "It might not be necessary to refer to these authorities, for it is the essence of forgery that one signs the name of another to pass it off *as the signature or counterfeit of that other*. This cannot be when the party openly, and on the face of the paper, declares that he signs for that other; there he does not counterfeit the name of the other, nor attempt to pass the signature as the signature of that other. The offense belongs to an entirely different class of crimes." In *Mann* v. *People*, 15 Hun, 155, the court, in an elaborate opinion in which the authorities and the arguments for an opposite view are fully reviewed and discussed, holds that "where one executes and issues an instrument purporting on its face to be executed by him as the agent of a principal therein named, he is not guilty of forgery, either at common law, *or under the statutes of this state*, even though he has in fact no authority from such principal to execute the same." (We quote from the syllabus, which is a correct condensation of the opinion.) In *Commonwealth* v. *Baldwin*, 11 Gray, 199; 71 Am. Dec. 703, the supreme judicial court of Massachusetts say: "It is not, says Sergeant Hawkins, the bare writing of an instrument in another's name without the privity, but the giving it a false appearance of having been excuted by him, which makes a man guilty of forgery. If the defendant had written upon the note 'William Schouler, by his agent Henry W. Baldwin,' the act plainly would not have been forgery. The party taking the note knows it is not the personal act of Schouler. He does not rely upon the signature. He is not deceived

by the semblance of his signature. He relies solely
upon the averred agency and authority of the defend-
ant to bind Schouler. So, in the case before us, the
note was executed *in the presence* of the promisee. He
knew it was not Schouler's signature." In *Common-
wealth* v. *Foster*, 114 Mass. 311; 19 Am. Rep. 353, the
court say: "The falsity of the instrument consists of its
purporting to be the note of some party *other than the
one actually making the signature.* The falsity of the act
consists in the intent that it shall pass *as the note of
some other party."* In *State* v. *Young*, 46 N. H. 270, 88
Am. Dec. 212, the supreme court of that state say: "To
forge or counterfeit is to *falsely make;* and an alteration
of a writing must be *falsely made* to make it forgery at
common law or by our statute. The term falsely, as
applied to making or altering a writing in order to
make it forgery, has reference not to the contents or
tenor of the writing, or to the fact stated in the writ-
ing, because a writing containing a true statement may
be forged or counterfeited as well as any other, but it
implies that the paper or writing is false, not genuine,
fictitious, not a true writing, without regard to the truth
or falsehood of the statement it contains—a writing
which is the counterfeit of something which is or has
been a genuine writing, or one which *purports* to be a
genuine writing or instrument when it is not." In
*State* v. *Willson*, 28 Minn. 52, the court referring ap-
provingly to *Mann* v. *People, supra*, say: "The court de-
cided that this did not constitute forgery, and held, in
substance, that when one executes and issues an instru-
ment purporting on its face to be executed by him as
agent of a principal therein named, he is not guilty of
forgery, although he has in fact no authority from such
principal to execute or issue the same. In fact we found
no authority to the contrary, and the text-writers uni-
formly lay down or approve of the same rule." There
are numerous other authorities to the same point,
but further citation is unnecessary. Of course the
averment in the information that the appellant uttered

and passed the said instrument "as true and genuine" is also, under the above views, unsupported by the evidence.

It is contended that the definition of forgery in section 470 of the Penal Code makes the crime different from forgery at common law; but with respect to the question here under discussion there is no such difference.   At common law there were frequent embarrassing questions as to what *kinds of writings* were the subjects of forgery; while our code, to avoid those questions, enumerates a very large number of writings as subjects of forgery.   But as to what constitutes forgery of instruments which are subjects of forgery, the definitions at common law and by our code are the same. " Forgery, at common law, is the false making or materially altering, with intent to defraud, of any writing which, if genuine, might apparently be of legal efficacy, or the foundation of a legal liability." (2 Bishop's Criminal Law, 8th ed., sec. 523.)   In the notes to the section of Bishop just quoted many other definitions are given, and it will be noticed that the leading descriptive words are " false making" (or altering).   In our code the words are " every person who with intent to defraud another, falsely makes, alters," etc., any of the written instruments enumerated.   The definition is therefore essentially the same in both instances; and it is the same in the statutes of all the other states to which our attention has been called, but the meaning of the words " false making" when applied to forgery is that hereinbefore stated.

The broad and well established distinction above set forth cannot be ignored by courts or jurors—even when in their opinion a more severe punishment should be imposed on a defendant than the one which the law prescribes for the offense of which he is guilty.   As was said in *Mann* v. *People, supra,* " whatever his misdeeds, he must not suffer for a crime which he has not committed."

Forgery is a grave and exceedingly dangerous crime.

A very large part of the business of civilized countries is done by means of negotiable instruments. These are rarely presented by the makers, but are paid to others on the faith that the signatures, and the bodies of the instruments, are genuine. The business of a bank would come to a standstill if the paying teller would not pay any check until he could communicate with the drawer. Hence, if there were many successful forgeries there would be the utmost confusion in business circles. Consequently forgery, no matter how small the amount involved, is made a felony. But obtaining money or other property by false pretenses, where the party defrauded gives credit, not to the genuineness of a writing, but to the person who deceives him, is made a misdemeanor, or felony, according to the amount of money obtained by the false representation.

For the foregoing reasons the judgment must be reversed; and, of course, another trial upon the theory on which the first trial was conducted would be useless.

The judgment and order appealed from are reversed.

TEMPLE, J., and HENSHAW, J., concurred.