## W. F. SCHULTE v. STATE.

No. A-6345.   Opinion Filed Nov. 24, 1928.
Rehearing Denied Dec. 8, 1928.
(271 Pac. 1045.)

174

Arrington & Evans, for plaintiff in error.

Edwin Dabney, Atty. Gen., and J. H. Lawson, Asst. Atty. Gen., for the State.

DAVENPORT, J. The plaintiff in error, hereinafter referred to as the defendant, was convicted of forgery in the second degree, and his punishment fixed at two years in the state penitentiary; motion for new trial was filed and overruled, and defendant duly excepted, and has perfected his appeal to this court.

The amended information upon which the defendant was tried and convicted, omitting the caption, reads as follows:

"Comes now J. W. Dean, the duly qualified and acting county attorney, in and for Pontotoc county, state of Oklahoma, and gives the district court of said county and state of Oklahoma, to know and be informed that the above named defendant, W. F. Schulte, late of Pontotoc county, did in Pontotoc county and in the State of Oklahoma, on or about the 27th day of December, the year of our Lord one thousand nine hundred and twenty, and before the commencement of this prosecution commit the crime of forgery in the second degree, in the manner and form as follows: That is to say the defendant did in said county and state, at the above named time and place, being then and there an officer and agent of the Pontotoc Custom Gin Company, a corporation of Ada, Oklahoma, duly organized and existing under and by virtue of the laws of the state of Oklahoma, unlawfully, wrongfully, wilfully, fraudulently and feloniously issue, sell and pledge to one W. A.

Simpson, as collateral security for the purpose of securing one certain promissory note, then and there executed and delivered by the said W. F. Schulte to the said W. A. Simpson, in the principal sum of four hundred ($400.00) dollars and upon which said promissory note and collateral security the said W. F. Schulte did then and there receive from the said W. A. Simpson, the sum of four hundred ($400.00) dollars, good and lawful money of the United States of America, a more particular description of which is to the county attorney unknown, one certain false, spurious and fraudulent certificate of stock for fifty (50) shares of the capital stock of the said Pontotoc Custom Gin Company, a corporation aforesaid, which said false, spurious and fraudulent certificate of stock was and is in words and figures as follows, to wit:

"Incorporated under the Laws of the State of Oklahoma.

"No. 304. Shares 50.
"Pontotoc Custom Gin Company, Ada, Oklahoma.
"Capital Stock $30,000.00.

"This certifies that W. F. Schulte if the owner of fifty shares of Ten Dollars each of the Capital Stock of Pontotoc Custom Gin Co., Fully Paid and Non-Assessable transferable only on the books of the Corporation by the holder hereof in person or by Attorney, upon surrender of this Certificate properly endorsed.

"In witness whereof, the said Corporation has caused this certificate to be signed by its duly authorized officers and to be sealed with the Seal of the Corporation, this 20th day of April, A. D. 1920.

"R. Bess, President
"S.

"J. B. Parker, Secretary. [Seal.]
"Shares $10.00 Each.

"Which said certificate bears the following endorsements on the back thereof:

"Certificate for 50 Shares of the Capital Stock of the Pontotoc Custom Gin Co., Ada, Oklahoma. Issued to W. F. Schulte, Dated Apr. 20, 1920.

"For value received, _____ hereby sell, assign, and transfer unto _____ Shares of the Capital Stock

represented by the within Certificate, and do hereby irrevocably constitute and appoint _____ to transfer said Stock on the books of the within named Corporation with full power of substitution in the premises.

"Dated _____ 19____.

"W. F. Schulte.

"In the presence of _____

"W. A. Simpson.

"That the said W. F. Schulte then and there well knew that said certificate of stock was then and there false, spurious and fraudulent, in this to wit: that said certificate of stock had been duly signed in blank by the proper officers of said Pontotoc County Custom Gin Company, to wit: Its president and secretary, and left in the care and custody of the said W. F. Schulte, as officer and agent of said company as aforesaid, and that the said W. F. Schulte filled in said certificate of stock in the blank places therein so as to read as above set forth, or cause the same to be filled in by some person or persons unknown to the county attorney; that said stock was further false, spurious and fraudulent in that the same had not then and there been duly signed, issued, sold and pledged, or duly authorized so to be done by the board of directors, or other managing body of said Pontotoc Custom Gin Company, having authority to sign, issue, sell and pledge the same, as was then and there well known by the said W. F. Schulte, but that the said certificate of stock was then and there false, spurious and fraudulent, as he, the said W. F. Schulte, then and there well knew at the time he so issued, sold, pledged and delivered the same to the said W. A. Simpson, aforesaid, but then and there, knowingly, wrongfully, wilfully, fraudulently and feloniously made such sale, pledge and delivery of said certificate of stock to the said W. A. Simpson, for the purpose aforesaid and with the unlawful, fraudulent and felonious intent then and there on the part of him, the said W. F. Schulte, to have the said certificate of stock uttered and passed as genuine and with the unlawful, fraudulent and felonious intent then and there cheat and defraud the said W. A. Simpson, Pontotoc Custom Gin Company, a corporation, and other persons, corporations and associations unknown to the county attorney, contrary to the form of the statute, in

such cases made and provided, and against the peace and dignity of the state of Oklahoma.

"J. W. Dean, County Attorney."

Defendant filed a demurrer to the information, which demurrer was by the court overruled, and defendant duly accepted.

The testimony on behalf of the state is, in substance, as follows: W. A. Simpson stated that he was a farmer living in Pontotoc county; that he knew the defendant; that about the first of January, 1920, he lent the defendant some money; he took the defendant's note, and took from the defendant as security a certificate for 50 shares of stock in the Pontotoc Customs Gin Company; that he afterwards took a note from the defendant for $285.90; that he sold the notes with a balance due on them to John P. McKinley.

John P. McKinley testified he bought two notes from W. A. Simpson, and Simpson delivered the assignment of stock for 50 shares in the gin company; that he had photographs made of the notes and stock by N. B. Stall.

N. B. Stall testified as to being a photographer and that he made a photographic copy of two notes and stock for John P. McKinley; that, after making copies, he returned them to McKinley. He then identified the photographic copies.

W. A. Simpson, recalled, testified that he let the defendant have $400, and took his note and certificates of gin stock as security; that he saw the defendant about this matter in September, 1923; that he talked with Mr. Rives of the Oklahoma State Bank of Ada.

John W. Balthrop, manager of the gin company, and Coleman Lee, bookkeeper of the gin company, went to the office of the defendant, in Ada, when he carried the stock certificates with him; that Mr. Balthrop asked the defendant how it came he had so many certificates,

and which was the original stock. the defendant answered that Mr. Rives had the original stock and the other held by the witness was not good.

John P. McKinley was recalled and testified that he surrendered the note and stock of the defendant in the month of November, 1923; that the defendant stated the certificate of stock was not good; the defendant did not make a statement as to why the certificate was not good; that when he surrendered the certificate the note had been paid in full.

C. H. Rives was recalled and stated that he remembered being present at the office of the defendant when Mr. Balthrop asked the defendant about the certificate of stock, and defendant stated he would replace the Simpson certificate with a good certificate.

J. W. Balthrop, on cross-examination, stated that the defendant had actually owned 50 shares of the stock of the gin company and traded some to a man by the name of Wilburn. He did not know about the various certificates held by the defendant. Defendant did not claim at the time to own more than 50 shares of stock. They had not passed upon the proposition of a stockholder pledging his certificates of stock as collateral.

Testimony was introduced to show that certificates Nos. 7, 14, 266, 271, 290, and 304 were certificates owned or claimed by the defendant. No. 304 is the certificate upon which this prosecution is based. A number of certificates were mentioned, showing that the president's name, R. Bess, with the letter "S" under the name, and it was admitted by all that the "S" indicated the name of Schulte, as he had often signed the president's name with the letter "S" to show by whom the stock was signed.

The testimony of defendant's witnesses tends to

show that there was no consideration passed in the issuing of the stock certificate 304, for 50 shares of the gin company stock. All of the testimony shows President R. Bess' name was signed with the letter "S" under it. Witness Lee, on redirect examination, stated authority to sign the name of Mr. R. Bess extended only to certificates that Mr. Bess ought to have signed.

J. B. Parker testified that he was secretary of the company; that the defendant was the attorney for the company throughout the years 1920, 1921, 1922, and 1923, and also a stockholder. R. Bess was its president during these years, and meetings of the directors were held at the office of the defendant; that after the reorganization the limit of 50 shares owned by any one of the stockholders was placed in effect; that the board meetings passed on transfers before issuing new stock; the approval of the transfer of stock was entered on the minutes, and he would then sign the number of certificates if he did not have time to fill them out; defendant would then fill them out; he did not remember whether he authorized the defendant to fill out certificate No. 304, and did not know of any sale of new stock to the defendant after the reorganization; he had not received any money from the defendant for new stock.

On cross-examination, Mr. Parker testified with reference to numerous signatures of R. Bess with the letter "S" under it in the stock book; that they were evidently and probably signed by the defendant; the directors made no objection to the stockholders putting up stock as collateral, and, if stock was put up by stockholders, so far as he knew the directors never did anything about it.

R. Bess testified that he was president of the gin company on the date of the alleged crime; the defendant was the company's attorney; meetings were held

in the office of the defendant and records were kept there; he never authorized the defendant to sign his name to the stock, except stock authorized at the meetings, or to fill in above his name; the defendant owned at one time 50 shares of stock; the defendant never said anything about getting a certificate in lieu of other certificates.

On cross-examination, Mr. Bess testified that they were usually in a hurry to go home and sometimes he would authorize Mr. Schulte to sign his name to a stock certificate, but he did not know anything about the issuing of stock certificate No. 304.

This is all the testimony we deem necessary to set out. At the close of the state's testimony the defendant demurred to the evidence offered by the state as being insufficient to sustain the allegations of the information, and being insufficient to prove any offense charged or attempted to be charged in the information. The demurrer was overruled, and defendant duly excepted. The defendant then moved for an instructed verdict, which motion was overruled, and defendant duly excepted.

The prosecution in this case seems to be based upon section 2081, C. O. S. 1921, which is as follows:

"Any officer or agent of any corporation or joint stock association formed or existing under or by virtue of the laws of this state, or of any other state, government or country, who, within this state, wilfully signs or procures to be signed, with intent to issue, sell or pledge, or to cause to be issued, sold or pledged, or who wilfully issues, sells or pledges, or causes to be issued, sold or pledged, any false or fraudulent certificate or other evidence of the ownership or transfer of any share or shares of the capital stock of such corporation or association, whether of full paid shares or otherwise, or of any interest in its property or profits, or of any certificate or other evidence of such ownership, transfer or

interest, or any instrument purporting to be a certificate or other evidence of such ownership, transfer or interest, the signing, issuing, selling or pledging of which has not been duly authorized by the board of directors or other managing body of such corporation or association having authority to issue the same, is guilty of forgery in the second degree."

The testimony shows that the stockholders of the gin company met in the office of the defendant; that the defendant was a stockholder and attorney for the company, and that they often held meetings until late, and, when the directors authorized the issuing of stock of the company, the secretary would sign the certificate of stock, and the president when present would sign the stock, and when absent or in a hurry to go home, would direct the defendant to sign his name to the certificates, and that often the defendant had done so and would place under the name of the president the letter "S," showing by whom it was signed.

The certificate of stock upon which this prosecution is based is No. 304. Neither the president nor secretary would state whether or not they signed their name to this certificate; they stated they did not remember; that no money had been received by the company for the sale of this certificate of stock. There is no testimony showing that the certificate of stock was signed by the secretary and the president in blank, as alleged in the information, and the question to be determined by this court is, Does the filling out of the certificate of stock with the secretary's name signed to it, and R. Bess, president of the company signed to it by the defendant, with the letter "S" under it, amount to forgery?

26 Corpus Juris, on page 898, states:

"The essence of forgery is the making of a false writing with the intent that it shall be received as the act of another than the party who signed it."

On page 899 of the same volume, it says:

"One who executes an instrument purporting on its face to be executed by him as the agent of the principal therein named when in fact he has no authority to execute such instrument, is not guilty of forgery as the instrument is nothing different from what it purports to be, the act being a false pretense."

See U. S. v. Glasener (D. C.) 81 F. 566; In re Tully (C. C.) 20 F. 812.

In State v. Taylor, 46 La. Ann. 1332, 16 So. 190, 25 L. R. A. 591, 49 Am. St. Rep. 351, it was held by the Supreme Court of the state of Louisiana:

"An instrument showing on its face that the person who executed it signed as agent for the maker cannot be subject to forgery, although such agent acted without authority."

In Ex parte Offutt, 29 Okla. Cr. 401, 234 P. 222, this court quoted with approval from People v. Bendit, 111 Cal. 274, 43 P. 901, 31 L. R. A. 831, 52 Am. St. Rep. 186:

"To constitute forgery, there must be the making of a writing which falsely purports to be the writing of another. A false statement of fact in the body of the instrument, or a false assertion of authority to write another's name, or to sign his name as agent, by which a person is deceived and defrauded, is not forgery. To make it such there must be a design to pass as the genuine writing of another person, that which is not his writing."

There is no dispute that in the certificate of stock upon which this prosecution is predicated, where the name of R. Bess was signed to it with the letter "S" under it, that the letter stood for the name of the defendant. The question of whether or not the defendant was entitled to have 50 shares of stock issued to him by the company is immaterial in a prosecution for for-

gery. It is also immaterial as to whether or not he signed the name of R. Bess, the president of the company, with or without his authority. When he signed the name of R. Bess as president and placed his initial "S" under it, he was thereby showing his agency. The certificate shows to have been executed by the agent, and we hold that it did not purport to be an instrument executed by R. Bess, as president of the gin company; that the state wholly failed to show that the certificate was signed by the secretary and president of the gin company and left with the defendant, which is one of the material allegations in the information. There being no competent testimony to sustain a conviction, the demurrer of the defendant to the evidence should have been sustained and the jury advised to return a verdict of not guilty.

For the reasons herein stated, the cause is reversed and remanded.

DOYLE, P. J., and EDWARDS, J., concur.