MALLORY *v.* STATE.

(*Nashville,* December Term, 1942.)

Opinion filed February 27, 1943.

W. H. NORVELL, of Chattanooga, for plaintiff in error.

ERNEST F. SMITH, Assistant Attorney-General, for the State.

MR. JUSTICE NEIL delivered the opinion of the Court.

The plaintiff in error is under conviction in two cases in the Criminal Court of Davidson County upon an indictment charging him in the first count with forgery and in the second count with passing forged paper. The only assignment of error presents the question of whether or not under the admitted facts the defendant is guilty of the particular crime charged against him.

It is the contention of the plaintiff in error that the trial judge was in error in not sustaining his motion for a new trial and in not directing a verdict in his favor.

When the cause came on for trial the State and the defendant entered into the following stipulation: "In this case there are two cases between the defendant, P. T. Mallory, and the State. The first is a check dated February 4, 1941, Nashville, Tenn., payable to the order of the Labor Advocate, in the amount of $10.00, drawn on the Third National Bank of Nashville, Tenn., signed by the Oury Iron & Metal Company, E. E. Oury, and it is endorsed on the back 'Labor Advocate, by P. T. Mallory', and then endorsed 'Cohen Bros.' It is stipulated that the defendant, P. T. Mallory, placed that endorsement on this check, or did so with the exception of 'Cohen

Bros.', and that he gave that check to Cohen Bros., and that he received the money thereon, all in Davidson County, Tennessee.''

The stipulation with reference to the second check is identical with the first except as to the amount of the check and the names of the parties to the instrument.

In addition to the foregoing stipulation, the evidence conclusively shows that the plaintiff in error was an employee of the Labor Advocate at the time of the offense in soliciting advertising for the paper. He was advertising solicitor, for which ''he was to receive thirty per cent of all advertising he took in.'' It appears from the undisputed testimony of Mrs. W. M. Taft, the business manager, that she alone had authority to collect advertising accounts and that the plaintiff in error had no authority to endorse any check payable to the Labor Advocate.

Where the agent of the payee of any note, check, or other negotiable instrument endorses the name of such payee upon the back of the paper, without authority, by writing his own name underneath it as agent, does this constitute the crime of forgery or passing forged paper? The question is one of first impression in this State.

Forgery at common law denotes a false making, which includes any alteration or addition to a true instrument, a making, *malo animo*, of any written instrument for the purpose of fraud and deceit. Any alteration of a written instrument whereby its legal effect is varied will constitute the offense. *Garner* v. *State*, 73 Tenn. (5 Lea), 213. The crime of forgery is defined by Section 10979 of the Code as follows: ''Forgery is the fraudulent making or alteration of any writing to the prejudice of another's rights.''

■ There can be no doubt that there must be fraudulent intent to constitute the offense. Moreover, the writing must be of some legal efficacy, real or apparent, since otherwise it has no legal tendency to defraud. Bishop, Criminal Law, section 499; *State* v. *Corley,* 63 Tenn. (4 Baxt.), 410.

■ In *Garner* v. *State,* supra, it was shown that the defendant erased from a county warrant a "special endorsement to a named person or order" so as to make the endorsement general and passed it, thus altered, to a third party. This was held to constitute the crime of forgery. The effect of the erasure was to render negotiable a paper that was not negotiable, and hence it was held by the Court, "An alteration of the endorsement, either by erasure or cutting off, by which the special endorsement is made general, would be as much forgery as a similar endorsement of a negotiable security, and for the same reason." While the holding of the Court was thus sound in logic and supported by recognized authority, it does not touch the point made in the case now before us.. Here the plaintiff in error added nothing to the instrument to change or alter its legal efficacy. He was guilty only of an unauthorized act, which it must be admitted was fraudulent, but did not constitute the crime of forgery or passing forged paper.

In American Jurisprudence, Vol. 23, section 10, p. 680, it is said: "Hence, generally, an instrument which shows on its face that the person who signed it did so as the agent of the purported maker is not a forgery; and a person does not commit the crime of forgery where he falsely represents himself as a collector for a business house, receipts in his own handwriting, in the name of the firm with himself as agent, one of its bills sent to a debtor, and appropriates the money paid to him to his own use."

In 12 R. C. L., p. 145, it is said: "So, if one fraudulently executes and issues an instrument purporting on its face to be executed by him as the agent of a principal therein named, he is not guilty of forgery though he has in fact no authority from such principal to execute the writing. This follows from the cardinal rule that the writing or instrument itself must be a simulation."

The foregoing rule of law is fully sustained by many well considered cases. Our own case of *State* v. *Whitson*, 159 Tenn., 401, 19 S. W. (2d), 244, 245, is in line with the authority above quoted, wherein it was held that a member of a partnership who endorses a negotiable instrument in the partnership name, without the knowledge and consent of the other partner, is not guilty of forgery. Mr. Justice CHAMBLISS, speaking for the Court, says: "Whether or not there was a purpose to defraud his partner, the defendant cannot be said to have committed forgery in signing the partnership name in the transaction which exceeded the scope of the partnership business."

The courts have properly drawn a distinction between forgery and obtaining property by a false writing. 35 C. J. S., False Pretenses, section 3, p. 638. Also, where the accused is shown to be the agent of the payee in the instrument and where he does not bear such a relation.

In *Goucher* v. *State*, 113 Neb., 352, 204 S. W., 967, 968, 41 A. L. R., 227, it is said: "The essence of forgery is the making of a false writing with the intent that it shall be received as the act of another than the party signing it."

The annotator, after reviewing a number of cases, says: "While there is an irreconcilable conflict in the authorities, the better view and that supported by the

majority opinion is that under the common law and under statutes defining forgery in the substantial language of the common law definitions, the genuine making of an instrument for the purpose of defrauding does not constitute the crime of forgery.''

The leading case in England on the subject is *Reg.* v. *White* (1847), 2 Car. & K., 404, where, after full argument, fifteen judges held it was not forgery to endorse for discount a bill of exchange under a false assumption of authority, to endorse it ''Per Procuration'', since the writing did not purport to be that of any other person than the man who executed it.

Another important case referred to, in which the above case of *Reg.* v. *White, supra,* was held to be conclusive upon the Court (41 A. L. R., 244) ''. . . where a bill of exchange having been drawn by the Bank of Ireland on the Bank of England to the order of one Mrs. Haliday and indorsed to Charles Macintosh & Company to order, the defendant, a clerk for Macintosh & Company, obtained possession of it surreptitiously, and, though having no authority, indorsed it, 'Received for Chas. Macintosh & Co., Alex. Heilbonn, No. 9 Vine Street, Regent Street, No. 73 Aldermanbury,'' the name of the firm being written in imitation of the handwriting of one of the partners, but the balance in the undisguised handwriting of the defendant, *Re Heilbonn,* 1853, 1 Parker Cr. R. (N. Y.), 429, wherein the English cases of *Rex* v. *Arscott* [6 Car. & P., 408], and *Reg.* v. *White* [2 Car. & K., 404], *infra,* were conclusive upon the court upon the question considered, the case being one for extradition to England; but the court said: 'It is the essence of forgery that one signs the name of another to pass it off as the signature, or counterfeit of that other. This cannot be when the party openly, and on the face of the

paper, declares that he signs for the other; there he does not counterfeit the name of the other, nor attempt to pass the signature as the signature of that other. The offense belongs to an entirely different class of crimes;' ''

The distinction between the crime of forgery and obtaining money by false representation is discussed in the case of *People* v. *Mann,* 1878, 75 N. Y., 484, 31 Am. Rep., 482.

In *People* v. *Bendit,* 1896, 111 Cal., 274, 43 P., 901, 31 L. R. A., 831, 52 Am. St. Rep., 186 the court said: ''The instrument must fraudulently purport to be what it is not. And there was nothing of the kind in the case at bar. There was no pretense that 'Wm. Cluff & Co.' was the genuine signature of that firm. It was written by appellant himself, in the presence of the party who paid the money. He added the initials 'A. B.' to it, and he was understood to be acting as the agent of the firm, and to have written the name 'Cluff & Co.' by himself as such agent. By these acts he may have committed some other crime, but he did not commit forgery.''

We do not overlook authorities to the contrary wherein it is held that one may be guilty of the false making of an instrument, although signed and executed in his own name, if it be false in a material part but calculated to induce another to give credit to it as genuine. *Moore* v. *Com.,* 92 Ky., 630, 18 S. W., 833, and other cases. See, also, *United States* v. *Hartman* (D. C.), 65 F., 490. It must be noted that in some of these cases at least, the question now before us was not made, and some were no doubt induced by the language of a particular statute defining the crime of forgery.

In *United States* v. *Hartman; supra,* the accused was prosecuted for violating United States revenue statutes. The court gave a broad interpretation to the federal

act relating to forgery. Moreover, these cases represent the minority rule and may be easily distinguished from the instant case. Here the plaintiff in error, Mallory, had an interest in the two checks which came into his possession, he being entitled to thirty per cent of the total amount of each check when properly endorsed and cashed, and the payee, Labor Advocate, entitled to seventy per cent. His endorsement "Labor Advocate, by P. T. Mallory" did not purport to be counterfeit of the name of the payee of the checks. The fraud, if any, consisted in inducing confidence in the validity of the agency, and no intended deceit as to the genuineness of the instrument itself.

It may be argued that banks, as well as individuals, cashing many checks, should not have imposed upon them the duty of making inquiry of every holder of a check as to his authority to endorse it before cashing it. While it may work a hardship in some isolated cases, we are not persuaded to depart from the majority holding that mere deceit as to agency, or authority to endorse, does not constitute forgery. Moreover, the accused in no case can escape criminal liability for his unauthorized act, the said act being either a fraudulent breach of trust or obtaining money or property under false pretense.

We think the trial judge was in error in not sustaining defendant's contention that, under the admitted facts, he was not guilty of forgery.

Reversed.