IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
April 4, 2006 Session

## LORINE GOODWIN HINDMAN v. ALLEN MOORE and wife, JACKIE MOORE

**Direct Appeal from the Chancery Court for Bradley County**
**No.  02-337     Hon. Jerri S. Bryant, Chancellor**

**No. E2005-01287-COA-R3-CV  - FILED MAY 23, 2006**

Decedent executed a Power of Attorney document granting her son broad general powers to act on her behalf.  The son executed a Trust Deed and Modification Agreement on Decedent's property.  Decedent and later her Estate asked the Chancery Court to void these documents.  The Court refused.  On appeal, we affirm.

**Tenn. R. App. P.3 Appeal as of Right; Judgment of the Chancery Court Affirmed.**

HERSCHEL PICKENS FRANKS, P.J., delivered the opinion of the court, in which CHARLES D. SUSANO, JR., J., and SHARON G. LEE, J., joined.

Roger E. Jenne, Cleveland, Tennessee, for appellant.

Charles W. Pope, Jr., Athens, Tennessee, for appellees.

**OPINION**

        On December 11, 2002, decedent filed a Complaint against defendants, Allen Moore and his wife Jackie Moore, alleging that a purported pledge of the decedent's real estate to secure the "98 Note" resulted from forgeries, misrepresentations, and her son's breach of fiduciary duty, all of which constituted a fraud.  The Complaint requested the Chancery Court to restrain the defendants from foreclosing on decedent's interest in her real estate and declare the "98 Note" void as having been obtained by fraud.  Defendants denied all assertions of fraud.  The issues were joined and tried before the Chancellor who dismissed decedent's case.  Decedent filed a timely Notice of

Appeal.[1]

## Background

The Decedent owned two parcels of real estate, one was her residence and the other was a rental property. She executed a document appointing her son, Alvin Goodwin as her attorney in fact on October 16, 1981. This document states:

> . . . I, LORINE GOODWIN . . . do hereby appoint my son, ALVIN L. GOODWIN, my Attorney, for me and in my name, to act generally as my Attorney or Agent in all matters in which I may be interested or concerned, to buy, sell on my behalf and to execute and deliver all necessary instruments and without limitation to do all such acts and things as fully and effectually in all respects as I myself could do if personally present.
>
> This is a general POWER OF ATTORNEY, without limitation, and the fact that I have herein enumerated certain acts is not to be construed as limiting my Attorney to those acts. It is my intention to empower my Attorney to do all things, cash checks, write checks, deposit money, spend money, buy, sell, acknowledge instruments, and to do all things without limitation in all respects as fully and effectually as I myself could do if personally present.
>
> . . .
>
> This POWER OF ATTORNEY shall remain in full force and effect until the same shall have been revoked by written notice duly recorded, or until expiration by operation of law, it being intended that this POWER OF ATTORNEY shall remain effective even in the event of mental or physical debility on my part. [2]

The Decedent never revoked this document.

In the early 1990's Alvin Goodwin's wife, Reta Goodwin, started an interior design business called Design Resources, Inc. The owners of this firm were Reta Goodwin, Jimmie Jones, and Mel Rinehart. They obtained the initial financing used to start this business through a loan from Cleveland Bank & Trust Co. arranged by Jimmie Jones' husband, Larry Jones (the "93 Note"). The

---

[1] After decedent's death on December 14, 2005, this Court substituted the Estate of Lorine Goodwin Hindman as plaintiff-appellant.

[2] This Power of Attorney was recorded on November 29, 1993 and again on January 5, 1994.

decedent volunteered to pledge her rental property as collateral to secure this loan. She also personally signed the resulting Deed of Trust (the "93 Deed of Trust"). The decedent's property was not the only security for this loan. Other collateral included a parcel owned by Larry Jones and Jimmie Jones, as well as another parcel owned by Larry Jones and his sister, Jackie Moore. The note and underlying Deed of Trust were paid off and released.

Later, Design Resources executed a second note secured by the Decedent's property. The necessary Deed of Trust was executed by Alvin Goodwin without the Decedent's knowledge. Although he signed as the Decedent's attorney in fact, he admits that he exceeded his authority. This Note and Deed of Trust was eventually paid off and released.

On June 27, 1995, Design Resources obtained another loan (the "95 Note") from Capital Bank. The Deed of Trust securing this loan pledged not only the property pledged in the 93 Deed of Trust, but also the Decedent's personal residence.[3] Although the decedent's name is signed on this Deed of Trust, neither the decedent nor Alvin Goodwin knew of this transaction at the time of its execution. Reta Goodwin admitted that she signed the name Lorine Goodwin to the Deed of Trust without the decedent's knowledge or permission. This Note was later modified in July 1996.

The 95 Note was refinanced through a second Capital Bank note dated June 5, 1998 (the "98 Note") signed by Reta Goodwin, Jimmie Jones, Melvin Rinehart, and Larry Jones. Another Deed of Trust secured this loan. This Deed of Trust was signed by Jackie Moore, Allen Moore, Larry Jones, Jimmie Jones, and Alvin Goodwin as attorney in fact for the decedent. It pledged the same property as the 95 Deed of Trust; thus, the Decedent's rental property and her personal residence were included. Goodwin testified that at the time he signed this Deed of Trust he thought it was a continuation of the 93 Deed of Trust and did not include decedent's personal residence. The decedent had no knowledge of this transaction.

On December 23, 1999, a Modification Agreement amended the 98 Note and Deed of Trust. The amendment reduced the principle amount and released the lien on the real estate owned by Larry and Jimmie Jones. The description of the land pledged to secure the 98 Note still included the Decedent's rental property and personal residence. The Modification Agreement was signed by Reta Goodwin, Melvin Rhinehart, Jimmie Jones, Larry Jones, Jackie Moore, Allen Moore, and Alvin Goodwin as attorney in fact for the decedent. The decedent had no knowledge of this transaction. When Design Resources later began to fail and Capital Bank was on the verge of foreclosing on all the collateral, Allen and Jackie Moore purchased the modified 98 Note and Deed of Trust on September 22, 2000 to protect their property rights. This assignment of Capital Bank's rights was recorded on September 25, 2000. The Moores eventually started foreclosure proceedings against the decedent's property. Alvin Goodwin testified that he first learned that decedent's personal residence was listed in the 98 Deed of Trust when he saw the foreclosure notice.

---

[3]This Deed of Trust also pledged the two parcels owned by Larry Jones, one being owned with Jimmie Jones and one being owned with Jackie Moore. (Exhibits 2 & 9).

The Trial Court made the following findings of fact: (1) "Alvin Goodwin executed the deed of trust in question for the benefit of himself and the benefit of his wife without the knowledge, information or consent of the [Decedent]," (2) "the funds received from the promissory note were not used for the monetary benefit of the [Decedent]," (3) Mr. Goodwin breached his fiduciary duty to the Decedent by pledging the her real estate, (4) Capital Bank had no notice that Mr. Goodwin breached this duty, (5) Neither Capital Bank nor the Defendants assisted Mr. Goodwin in violating his fiduciary duty, and (6) the Defendants are bona fide purchasers for value and have not been unjustly enriched. Based on these findings, the Chancery Court dismissed the decedent's case, and this appeal resulted.

**Discussion**

The Estate raises these issues for consideration:

1.       Whether the modified 98 Deed of Trust is void because Alvin Goodwin exceeded his authority as the Decedent's attorney in fact.

2.       Whether the modified 98 Deed of Trust is void due to a flawed acknowledgment.

3.       Whether the modified 98 Deed of Trust is void due to fraud.

The Chancellor's decision is subject to *de novo* review based upon the record of the proceedings below. *Keaton v. Hancock County Bd. of Educ.*, 119 S.W.3d 218, 222 (Tenn. Ct. App. 2003). We presume that the Trial Court's findings of fact are correct, unless the evidence preponderates to the contrary. Tenn. R. App. P. 13(d); *Walker v. Moore*, 745 S.W.2d 292 (Tenn. Ct. App. 1987). This presumption of correctness, however, does not apply to the Trial Court's conclusions of law. *Keaton*, 119 S.W.3d at 222.

The Plaintiff argues that the 98 Deed of Trust is void because Mr. Goodwin exceeded his authority under the power of attorney. Mr. Goodwin testified that the decedent had no knowledge of his use of the power of attorney in the transactions following the 93 Note. Regarding the 1999 modification of the 98 Deed of Trust, Mr. Goodwin testified that the decedent had no knowledge of the transaction and would not have approved it. Defendants argue that they enjoy the immunities of a holder in due course and, alternatively, that Mr. Goodwin acted within his apparent authority; and the Deed of Trust is valid.

Assuming *arguendo* that defendants' enjoy the immunities of a holder in due course, such immunities would apply to both the 98 Note and the 98 Deed of Trust.[4] *See Nashville Trust*

---

[4]A deed of trust securing payment of a negotiable instrument is considered an accessory or incident of the negotiable instrument. *Neely v. Clarence Saunders Co.*, 81 S.W.2d 390, 392 (Tenn. 1935); *W.C. Early Co. v. Williams*, 186 S.W. 102, 103-04 (Tenn. 1916).

*Co. v. Smythe*, 29 S.W. 903, 904-06 (Tenn. 1895). Their immunity would not be absolute, however, as they would still be exposed to the so called "real defenses." Tenn. Code Ann. § 47-3-305(a)-(b) (2005). One of these real defenses is "lack of legal capacity." § 47-3-305(a)(1)(ii). The comments to this section state, "If under the state law the effect [of such incapacity] is to render the obligation of the instrument entirely null and void, the defense may be asserted against a holder in due course." § 47-3-305 cmt. 1. A deed of trust executed by an attorney in fact is null and void to the extent that it exceeds the attorney in fact's authority. *Gimell, Simicker, Storms & Co. v. Adams*, 30 Tenn. (11 Hum.) 283, 286, 1850 WL 2108, at *2 (1850). The plaintiff's argument in this case is the equivalent of a real defense.

An attorney in fact's authority is governed by the laws of agency. *Eaton ex rel. Johnson v. Eaton*, 83 S.W.3d 131, 134 (Tenn. Ct. App. 2001). This authority consists of not only actual authority, but also apparent or ostensible authority. *Milliken Group, Inc. v. Hays Nissan, Inc.*, 86 S.W.3d 564, 567 (Tenn. Ct. App. 2001); *Intersparex Leddin KG v. Al-Haddad*, 852 S.W.2d 245, 247 (Tenn. Ct. App. 1992). Apparent authority exists when a principal's conduct clothes the agent with the appearance of authority. *Southern Ry. Co. v. Pickle*, 197 S.W. 675, 677 (Tenn. 1917); *Milliken Group, Inc.*, 86 S.W.3d at 569. The principal's conduct establishes apparent authority if "(1) the principal actually or negligently acquiesced in another party's exercise of authority; (2) the third person had knowledge of the facts and a good faith belief that the apparent agent possessed such authority; and (3) the third person relied on this apparent authority to his or her detriment." *White v. Methodist Hosp. South*, 844 S.W.2d 642, 646 (Tenn. Ct. App. 1992). When the principal has clothed the agent with apparent authority and the agent exercises this authority, the principal is bound. *Milliken Group, Inc.*, at 570.

Plaintiff argues the power of attorney did not authorize Mr. Goodwin to pledge real property; therefore, no third party could believe that Goodwin was authorized to execute deeds of trust. We do not agree, the power of attorney uses broad language to describe Mr. Goodwin's authority as the decedent's attorney in fact. The document establishing the Power of Attorney clearly states:

> . . . I, LORINE GOODWIN . . . do hereby appoint my son, ALVIN L. GOODWIN, my Attorney, for me and in my name, **to act generally as my Attorney or Agent in all matters in which I may be interested or concerned, to buy, sell on my behalf and to execute and deliver all necessary instruments and without limitation** to do all such acts and things as fully and effectually in all respects as I myself could do if personally present.
>
> **This is a general POWER OF ATTORNEY, without limitation, and the fact that I have herein enumerated certain acts is not to be construed as limiting my Attorney to those acts.** It is my intention to empower my Attorney to do all things, cash checks, write checks, deposit money, spend money, buy, sell, acknowledge instruments, and to do all things without limitation in all respects as fully and effectually as I myself could do if personally present.

(emphasis added).  This power of attorney was recorded on two separate occasions, and decedent held Mr. Goodwin out to the public as possessing broad authority to act on her behalf.

Moreover, the first instance that Mr. Goodwin exercised authority, pursuant to the power of attorney, to pledge the decedent's real property was his execution of the 93 Deed of Trust. Both the decedent and Mr. Goodwin signed the 93 Deed of Trust, but only Mr. Goodwin's signature was formally acknowledged.  An innocent third party reading this recorded document could reason that if the power of attorney did not grant Mr. Goodwin the authority to pledge the decedent's real property, Mr. Goodwin's signature would serve no purpose and the decedent's signature would need formal acknowledgment.  This could lead to the conclusion that the decedent's signature was not necessary to execute the Deed of Trust, but was only intended as an affirmation of Mr. Goodwin's authority to pledge real property pursuant to the power of attorney.  The decedent, by providing her personal signature in addition to that of her attorney in fact, acquiesced in this exercise of authority and held Mr. Goodwin out to the public as having authority to pledge the decedent's real property as security for loans made to Mrs. Goodwin and her business partners.

The Chancery Court found that Capital Bank and the Defendants were innocent third parties, and the evidence does not preponderate against this finding. Tenn. R. App. P. 13(d).  As we have observed, the power of attorney did not provide constructive knowledge of Mr Goodwin's lack of authority.  In addition, the record indicates that neither Capital Bank nor the defendants had actual knowledge of Mr. Goodwin's lack of authority.  Mr. Goodwin testified that he held himself out to others as being authorized to pledge the decedent's property.[5]  In this case, Capital Bank would not likely issue a loan in excess of $300,000.00 if it had any doubts as to Mr. Goodwin's authority, as half the collateral securing the loan was pledged pursuant to his authority as the decedent's attorney in fact.  Nor would a skeptical Capital Bank execute the 99 Modification Agreement which released the lien on the Jones' real estate and increased the bank's reliance on the decedent's property for security.  Additionally, one of the defendants, Mrs. Moore, testified that Mr. Goodwin did not admit his lack of authority until after the defendants purchased the 98 Note and Deed of Trust from Capital Bank.

Based upon the verbiage of the Power of Attorney in conjunction with the 93 Deed of Trust, Mr. Goodwin had apparent authority to execute the 98 Deed of Trust and the 99 Modification Agreement.  The decedent acquiesced in Mr. Goodwin's exercise of authority to pledge her property when she signed the 93 Deed of Trust.  The recorded power of attorney and 93 Deed of Trust could lead an innocent third party, such as Capital Bank or the defendants, to develop a good faith belief that Mr. Goodwin had the authority to sign the 98 Deed of Trust and 99 Modification

---

[5]Mr. Goodwin's representations are only relevant in determining whether the defendants and Capital Bank were innocent third parties.  It is irrelevant in determining whether Goodwin had apparent authority because apparent authority is "determined by the acts of the principal." *Intersparex Leddin KG*, 852 S.W.2d at 248.

Agreement on the decedent's behalf. Because Mr. Goodwin acted within the scope of his apparent authority when he signed the 98 Note and Deed of Trust and the 99 Modification Agreement, the Estate is bound.

Plaintiff argues the 98 Deed of Trust is void because it contains a flawed acknowledgment. The signature page of the 98 Deed of Trust includes both Mr. Goodwin's signature as decedent's attorney in fact and the decedent's name signed "by her attorney in fact." The Decedent had no knowledge of this transaction, but the acknowledgment on the Deed of Trust, however, states that the decedent "personally appeared" before the notary. Plaintiff relies on *In re Crim v. EMC Mortgage Corp.*, 81 S.W.3d 764 (Tenn. 2002) for the proposition that this flaw is sufficient to render the 98 Deed of Trust void.

*In re Crim* does not stand for the proposition that a flawed acknowledgment will render a deed of trust null and void. Rather, it holds that a deed of trust with a flawed acknowledgment is not legally registered; therefore, the deed of trust is void as to "subsequent creditors or bona fide purchasers without notice under Tenn. Code Ann. § 66-26-103." *Id.* at 767-70. Such a deed of trust would still be valid as to "parties to the same, and their heirs and representatives." Tenn. Code Ann. § 66-26-101 (2005). A flawed acknowledgment does not affect the rights of an original party to the 98 Note and Deed of Trust, such as Capital Bank. The same is true as to defendants. As Capital Bank's assignees, they stepped into Capital Bank's position with regard to its rights under the 98 Note and Deed of Trust. *SunTrust Bank, Nashville v. Johnson*, 46 S.W.3d 216, 226 (Tenn. Ct. App. 2000). Accordingly, a flawed acknowledgment would not void the 98 Deed of Trust nor affect the defendants' rights.

Finally, plaintiff argues that the 98 Deed of Trust is void due to Mr. and Mrs. Goodwin's acts of fraud. The 95 Deed of Trust was the first to pledge the decedent's personal residence as collateral. However, neither the decedent nor Mr. Goodwin signed this Deed of Trust. Reta Goodwin signed the decedent's name to the 95 Deed of Trust without the knowledge or permission of either the decedent or Mr. Goodwin. When Mr. Goodwin later signed the 98 Deed of Trust and the 99 Modification Agreement he did so without the decedent's knowledge. Mr. Goodwin testified that, although he held himself out to others as being authorized to pledge the decedent's real property, he did not believe that he had such authority. The Estate argues that the misrepresentations are sufficient to void the 98 Deed of Trust.

A forged deed of trust is "null and void upon its execution." *Beazley v. Turgeon*, 772 S.W.2d 53, 59 (Tenn. Ct. App. 1988) (citing *Lowe v. Wright*, 292 S.W.2d 413, 417 (Tenn. Ct. App. 1956)). Thus, Mrs. Goodwin's forgery with respect to the 95 Deed of Trust is sufficient to void it as to the decedent's property. Defendants, however, did not purchase Capital Bank's rights under the 95 Deed of Trust. They purchased the rights under the 98 Note and Deed of Trust as modified by the 99 Modification Agreement. Mr. Goodwin signed both the 98 Deed of Trust and the 99

Modification Agreement as the decedent's attorney in fact.[6] While Mr. Goodwin may have exceeded his actual authority when he signed these documents, this does not constitute forgery. *Mallory v. State*, 168 S.W.2d 787, 788 (Tenn. 1943). As we have noted, despite Mr. Goodwin's lack of actual authority, he acted within his apparent authority. Thus, the decedent was bound by Mr. Goodwin's conduct and the 98 Deed of Trust and 99 Modification Agreement are not void.

For the foregoing reasons, we affirm the Judgment of the Chancery Court and remand, with the cost of the appeal assessed to the Estate of Lorine Goodwin Hindman.

_____

HERSCHEL PICKENS FRANKS, P.J.

---

[6]Both of these documents list the Decedent's personal residence and rental property as collateral for the loan, and both documents include legal descriptions of these tracts.