Filed 2/17/15  P. v. Labasay CA2/6

Exhibit not available electronically

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION SIX

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>LAUREANO VALERA LABASAY,<br><br>    Defendant and Appellant. | 2d Crim. No. B252259<br>(Super. Ct. No. 2013017026)<br>(Ventura County) |

Laureano Valera Labasay appeals after a jury convicted him on three counts of offering a false or forged document for filing (Pen. Code,[1] § 115, subd. (b)) and one count of forgery (§ 470, subd. (d)), and found two out-on-bail allegations to be true (§ 12022.1, subd. (b)).  The trial court sentenced appellant to six years in state prison.  The court also issued orders prohibiting him from contacting the victims or their tenants or employees, or recording any further documents concerning the victims' property.  Appellant contends his forgery conviction must be reversed for insufficient evidence and the "no contact" and "no recording" orders must be stricken as beyond the court's

---

[1] All further undesignated statutory references are to the Penal Code.

authority.  The People concede both points, and we shall modify the judgment accordingly.  Otherwise, we affirm.**2**

STATEMENT OF FACTS

In 1997, Daniel and Barbara Manzer (as co-trustees of the Manzer Family Trust) became owners of the Woodcrest Apartments (the property), a 32-unit apartment complex in Oxnard.  Walker and Paul (WP), a property management company, has managed the property since January 2006.

Leonardo and Josephina Santera and their two sons moved into one of the property's apartments in October 2002.  On February 1, 2010, WP employee Denise Elliott served the Santeras with a three-day notice to pay rent or quit.  After the Santeras did neither, an unlawful detainer action was filed against them.  Appellant intervened in the action, claiming he was the Santeras' cotenant.  Elliott had no knowledge of appellant living on the premises.  Appellant subsequently sent Elliott correspondence claiming he became the owner of the property as the prevailing party in the unlawful detainer action.  Judgment in the action was actually entered in favor of the Manzers, and the Santeras were forcibly evicted.  Appellant was not present when the eviction took place.

After the eviction, appellant continued to demand that WP recognize him as the property's owner and forward all rent proceeds to him.  In June 2010, Elliott was informed that a "notice" had been posted on the front door to each unit with the typewritten title:  "TO:  ALL RENTERS AT 2951-3011 ALBANY DR.  OXNARD, CA 93003[.]  JUNE 24, 2010[.]  SUBJECT:  CHANGE OF OWNERSHIP[.]  NEW OWNER:  LAUREANO V. LABASAY[.]  NEW MANAGER:  BENEDICTO P. SANTERA[.]"  (Par. breaks omitted.)  The body of the notice bears appellant's signature and states among other things that he acquired the property through "Adverse Possession"

---

**2** Because we reverse appellant's forgery conviction, his claim that the eight-month sentence on that count should have been stayed under section 654 is moot.

after filing a claim of right or title. Appellant's handwritten notation at the bottom of the notice states: "ATTN: PLEASE MAKE CHECK PAYABLE TO: LAUREANO V. LABASAY[,] P.O. BOX 50944[,] OXNARD, CA 93031[.]" (Par. breaks omitted.)[3]

Elliott immediately went to the property and had the notices removed. Appellant was at the property when Elliott arrived and said he was there to collect rent along with Benedicto, whom appellant identified as the new manager. Elliott reiterated that the Manzers had prevailed in the eviction proceedings and told appellant the police had been called. Appellant said he was glad to have the matter settled with the police, but he and Benedicto left before the police arrived.

Appellant continued to assert that he owned the property. On July 11, 2011, he caused to be recorded a document that transferred ownership of the property from the Manzer Family Trust to a trust in appellant's name. The Manzers discovered the recording and sued to quiet title and for declaratory and injunctive relief. After judgment was entered in their favor, appellant was arrested and subsequently held over on charges of forgery and offering a false or forged document for filing. Appellant was released on bail and was ordered to stay away from the property and not to record any more documents related to the property without the court's permission. Without the court's permission, he then proceeded to record a homestead declaration against the property in November 2012, and a grant deed in April 2013. He was again arrested and charged with two additional violations of section 115, subdivision (b).

Appellant testified that he began living with the Santeras in 2009 and paid them rent. He admitted creating the "notice" that was posted on the tenants' front doors, but denied posting it or directing anyone to do so. Appellant believed that the Santeras had "bought" the property when they signed a month-to-month lease in 2002, and that he became in privity with them when he intervened in the unlawful detainer action and filed a prejudgment claim of right of possession. He acknowledged receiving a copy of the judgment in the unlawful detainer action, yet continued to maintain that he became the

_____

[3] A copy of the notice, which was admitted into evidence at trial, is attached to the opinion as Exhibit A.

prevailing party (and thus owner of the property) when the court rejected the Manzers' proposed default judgment. When he received notice the court was planning to destroy the exhibits in the quiet title action, he believed this meant the case had been dismissed in his favor. He recorded the homestead declaration to avoid "tax liabilities," and the grant deed "[t]o have . . . more claim to the ownership."

## DISCUSSION

### *Insufficient Evidence of Forgery*

Appellant's forgery conviction is based on the "notice" that falsely identified him as the property's new owner and directed the property's tenants to send him their rent payments. He contends the evidence is insufficient to support the conviction because the notice does not qualify as a false "request for the payment of money," as contemplated by subdivision (d) of section 470. The People correctly concede the point.

Section 470, subdivision (d) provides in relevant part that "[e]very person who, with the intent to defraud, falsely makes" a written "request for the payment of money" is guilty of forgery. Appellant was prosecuted for this crime on the theory that the notice he caused to be posted requested the payment of money and falsely represented that he was entitled to receive that money. This theory is legally unsound. "When the crime is charged to be the false making of a writing, there must be the making of a writing which falsely *purports to be the writing of another*. The falsity must be in the writing itself—in the manuscript. A false statement of fact in the body of the instrument . . . by which a person is deceived and defrauded, is not forgery. There must be a design to pass as the genuine writing of another person that which is not the writing of such other person. The instrument must fraudulently purport to be what it is not." (*People v. Bendit* (1896) 111 Cal. 274, 276-277 (*Bendit*).)

The writing at issue here does not purport to be anything other than what it is—a notice informing the tenants that appellant was the property's new owner and directing that all rent payments be forwarded to him. Although the false statements within the body of the document could have given rise to a prosecution for attempted theft by false pretenses (§§ 484, subd. (a), 664), they do not support a conviction of

4

forgery. (*Bendit, supra*, 111 Cal. at p. 281.) As the People concede, appellant 's forgery conviction must accordingly be reversed.

*The "No Contact" and "No Recording" Orders*

Upon sentencing appellant to state prison, the trial court issued open-ended orders prohibiting appellant from (1) having contact with the Manzers, past or present tenants of the property, or past or present WP employees; and (2) recording any documents related to the property.[4] Appellant claims these orders must be stricken because the court had no authority to issue them having sentenced appellant to state prison. The People correctly concede the error. (*People v. Ponce* (2009) 173 Cal.App.4th 378, 383–385; *People v. Stone* (2004) 123 Cal.App.4th 153, 159 [protective orders that are not probation conditions cannot exceed pendency of criminal proceedings].) Although the court may have had "inherent authority" to issue such orders "where the Legislature has not acted," the prosecution must present a "valid showing to justify the need for the order." (*People v. Robertson* (2012) 208 Cal.App.4th 965, 996.) The prosecutor did not do so here. The orders must accordingly be stricken.

DISPOSITION

Appellant's conviction of forgery (count 4; § 470, subd. (d)) and the eight-month sentence imposed thereon are reversed. As modified, appellant's total state prison sentence is five years four months. The "no contact" and "no recording" orders are stricken. The superior court is directed to prepare an amended abstract of judgment and

---

**4** The orders are stated in the abstract of judgment as follows: "Do not contact Daniel or Barbara Manzer in person, by mail, by phone, or in any other manner either directly or indirectly. [¶] Shall not contact, annoy, molest, or harass Daniel and Barbara [M]anzer, any employee, past or present, of the Walker and Paul Property Management Company, or any tenant, past or present, of the Albany Drive apartment complex in Oxnard. [¶] Shall comply with the provisions of any valid restraining or injunctive order. [¶] Defendant barred from recording any further documents." The court's oral pronouncement of the orders varied only in that the prohibition against recording documents was not limited to the property.

5

forward a certified copy to the Department of Corrections and Rehabilitation.  In all other respects, the judgment is affirmed.

NOT TO BE PUBLISHED.


PERREN, J.


We concur:



GILBERT, P. J.



YEGAN, J.

6

Matthew Guasco, Judge

Superior Court County of Ventura

_____


William Paul Melcher, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Lance E. Winters, Senior Assistant Attorney General, Steven E. Mercer, Robert C. Schneider, Deputy Attorneys General, for Plaintiff and Respondent.