## GREATHOUSE v. UNITED STATES.
### No. 5755.

United States Court of Appeals
Fourth Circuit.

Nov. 4, 1948.

Philip B. Goldberg, of Providence, R. I., and J. G. Adams, Jr., of Asheville, N. C., for appellant.

Oscar H. Doyle, U. S. Atty., of Anderson, S. C., and Walter H. Hood, Asst. U. S. Atty., of Greenville, S. C., for appellee.

Before PARKER, Chief Judge, and SOPER and DOBIE, Circuit Judges.

SOPER, Circuit Judge.

The defendant in the District Court, having defrauded the Bank of Travelers Rest of Travelers Rest, South Carolina, of the sum of $22,500 on October 14, 1947, was convicted of violating Section 3 of the National Stolen Property Act, as amended, 18 U.S.C.A. § 415 [now § 2314]. He was

sentenced on April 6, 1948, to three years' imprisonment on the first five counts of the indictment, and ten years' imprisonment on the last five counts, the sentences to run consecutively, provided that upon payment by the defendant of the sum of money due by him to the bank the last ten years' imprisonment was to be suspended. On June 8, 1948, the sentence was amended and the defendant was sentenced to three years' imprisonment on the first five counts and ten years' imprisonment on the last five counts, the sentences to run consecutively, provided that both sentences should be suspended upon payment to the bank of $22,000 as follows: $10,000 within fifteen days, and the remaining $12,000 at the rate of $200 per month, commencing on the first day of August, 1948.

The statute in question provides in part: " * * * whoever with unlawful or fraudulent intent shall transport or cause to be transported in interstate or foreign commerce any falsely made, forged, altered, or counterfeited securities, knowing the same to have been falsely made, forged, altered, or counterfeited, or whoever with unlawful or fraudulent intent shall transport, or cause to be transported in interstate or foreign commerce, any bed piece, bed plate, roll, plate, die, seal, stone, type, or other tool, implement or thing used or fitted to be used in falsely making, forging, altering, or counterfeiting any security, or any part thereof, shall be punished by a fine of not more than $10,000 or by imprisonment for not more than ten years, or both".

Each of the ten counts of the indictment charges that the defendant, with unlawful and fraudulent intent, caused to be transported in interstate commerce from Travelers Rest, South Carolina, to Dallas, Texas, a falsely made and forged security; and in each count the security is described as a check or bill of exchange, drawn on the First National Bank of Dallas, Texas, for a specified sum of money payable to the defendant, and signed "Woodruff Motor Sale, Inc., J. W. Greathouse." The check in each instance also contained a description of an automobile to which, as the evidence showed, the transaction related.

The checks amounted in the aggregate to $22,500.

It is conceded that the Bank of Travelers Rest cashed the ten checks for the defendant and thereby lost approximately $22,-000; but it is contended that under the facts surrounding the transactions, the defendant did not violate the federal statute because the checks were not falsely made and forged securities within the meaning of the Act. The defendant was in the business of buying used cars for various motor companies and for himself. In September, 1947, he began to do business with the Bank of Travelers Rest, which forwarded various drafts for him to auto sales companies at Houston, Texas, that were duly honored. On October 14, 1947, in the morning, the defendant drew four checks in the form described in the indictment, signed the names of the makers appearing thereon, presented them to the bank, and stated to the cashier, according to the latter's testimony, that Woodruff Motor Sale, Inc. was one of the oldest and largest used car concerns in Texas and was worth a million dollars. The checks were cashed by the bank or credited to Greathouse's account in the bank, with the understanding that the original bills of sale and certificates of title to the automobiles should be attached to the checks; but the defendant surreptitiously inserted copies of the title papers in the envelope addressed and mailed to the Texas bank and retained the original title papers himself. In the afternoon of the same day a similar transaction took place between the bank and the defendant with respect to six other drafts and the title papers for six other cars. All ten checks were dishonored when they reached Dallas, because neither of the signers had an account in the Dallas bank. The defendant, having retained the title papers to the automobiles, subsequently sold them and pocketed the proceeds.

The defendant testified that he signed the checks in the cashier's presence, and whilst this testimony was denied by the cashier, the circumstances under which the checks were drawn and the similarity of the handwriting of the two signatures warrants the assumption, for the purposes of

**514**

this opinion, that the cashier was aware that the defendant had signed not only his name but that of the Woodruff Motor Sale, Inc. The defendant's account of the transaction differs from that set out above only in the statement that he did not make any representation to the cashier of the South Carolina Bank as to the size or solvency of Woodruff Motor Sale, Inc., but that this name was one under which he did business individually, and that this fact was well known to the cashier.

■ We are of opinion that under these facts, the defendant's contention should be sustained. The words, "falsely made, forged, altered, or counterfeited" in the collocation in which they appeared are ejusdem generis and are usually employed to denounce the crime of forgery. Indeed it may be said that when used in an association of this kind the words "falsely made" and "forged" are substantially synonymous; and it has been so held in the construction of kindred statutes. United States v. Wentworth, C.C.D.N.H., 11 F. 52; United States v. Moore, D.C.N.D.N.Y., 60 F. 738. It is well established that forgery contemplates a writing which falsely purports to be the writing of another person than the actual maker. Hence it is not forgery for one, with intent to defraud, to issue a check in his own name on a bank in which he has no funds, and it is not a violation of the statute in question to cause such a check to be transported in interstate commerce. United States v. Wood, D.C.N.D.W.Va., 58 F.Supp. 451; United States v. Flores, D.C. Virgin Islands, 66 F.Supp. 880. Similarly if the writing purports or is known to be the writing of the defendant, it is not forgery for him to sign the name of another although he signs without the other's knowledge or consent under the false pretense that he had the authority to do so; People v. Bendit, 111 Cal. 274, 43 P. 901, 31 L.R.A. 831, 52 Am.St.Rep. 186; State v. Taylor, 46 La.Ann. 1332, 16 So. 190, 25 L. R.A. 591, 49 Am.St.Rep. 351; Goucher v. State, 113 Neb. 352, 204 N.W. 967, 41 A.L. R. 227 and note; or to sign a note in the name of a fictitious firm with intent to defraud and to represent falsely that the firm consists of the writer and another person. Commonwealth v. Baldwin, 11 Gray, Mass.,

197, 71 Am.Dec. 703. The general rule is well stated in the following quotation from People v. Bendit, supra, 111 Cal. at pages 276, 277, 43 P. at page 901:

" * * * When the crime is charged to be the false making of a writing, there must be the making of a writing which falsely purports to be the writing of another. The falsity must be in the writing itself —in the manuscript. A false statement of fact in the body of the instrument, or a false assertion of authority to write another's name, or to sign his name as agent, by which a person is deceived and defrauded, is not forgery. There must be a design to pass as the genuine writing of another person that which is not the writing of such other person.".

■ It is plain from the application of these principles that the charge of forgery in this case is not sustained by the fact that the defendant, with intent to defraud, drew the checks in his own name upon a bank in which he had no funds, or that he signed the name of Woodruff Motor Sale, Inc., whether that was the name in which he did business, as he claimed, or was merely the name of a non-existent corporation, as indicated by other testimony. It is true that the authorities hold that forgery may exist even if the name used be an assumed or fictitious one; Lyman v. State, 136 Md. 40, 109 A. 548, 9 A.L.R. 401 and note. But this rule is properly applicable only when the writing is issued as the writing of the fictitious individual and not when the name is signed by the defendant himself under the pretense that he has been authorized by an existing person to sign his name. When the writing is not passed off as the writing of another, it is immaterial whether the person it purports to designate is real or fictitious.

Undoubtedly the defendant may be successfully prosecuted under some penal statute in some jurisdiction, but the facts do not make out a case under the statute upon which the indictment was based. Having reached this conclusion, it is unnecessary to consider the additional defense that the court was without power to amend the original sentence, under Rule 35 of the Federal Rules of Criminal Procedure, 18 U.S.C.A.,

after the expiration of sixty days from the imposition thereof, or the additional defense that the transportation of two letters containing the two sets of checks to the Dallas Bank did not constitute ten separate violations of the Act.

The judgment of the District Court is Reversed.