Euel Jackson CUNNINGHAM, Appellant,

v.

UNITED STATES of America,
Appellee.

No. 7841.

United States Court of Appeals
Fourth Circuit.

Argued Oct. 6, 1959.

Decided Dec. 7, 1959.

Charles W. Laughlin, Richmond, Va. (court-appointed counsel), for appellant.

Hugh E. Monteith, Asst. U. S. Atty., Sylvia, N. C. (J. M. Baley, Jr., U. S. Atty., Asheville, N. C., on brief), for appellee.

Before SOBELOFF, Chief Judge, and SOPER and HAYNSWORTH, Circuit Judges.

SOBELOFF, Chief Judge.

The defendant appeals from his conviction in the District Court under an indictment in two counts charging him with transporting a forged check in vio-

lation of 18 U.S.C. § 2314 [1] and transporting a stolen vehicle in interstate commerce, in violation of 18 U.S.C. § 2312. [2]

On October 26, 1957, defendant bought a 1951 Dodge from the Glover Motor Company in Asheville, North Carolina, giving in payment a check drawn by him on the Home National Bank in Johnson City, Tennessee. Defendant, whose name is Euel Jackson Cunningham, signed the check "R. F. Cunningham," signed a purchase order for the car "Ronald F. Cunningham," and accepted a bill of sale made out in the name of Ronald F. Cunningham. Before accepting the check, an official of the Glover Motor Company contacted a local merchant, a Mr. Jenkins. From the testimony of Harry W. Powers, general manager of the company, it appears that Jenkins came to the Glover Motor Company, confronted the defendant, and said that he knew him. [3]

The check, drawn on a non-existent bank, has never been paid.

Six months later, on April 18, 1958, the Sheriff of Edgefield County, South Carolina, discovered the automobile, apparently abandoned, on a farm in that county. The Sheriff testified that he had no exact idea how long the car had been on the farm, but he did observe that "the grass had grown up around the car and small bushes, indicating that it had been there quite a while."

### The First Count—Transportation of Forged Check

As to the first count, charging transportation of a forged check, defendant makes two main contentions, the first and more substantial of which is that he could not be guilty of a violation of 18 U.S.C. § 2314 because there is no proof of a "forged" instrument. He relies

---

1. 18 U.S.C. § 2314 reads, in relevant part, as follows:

"* * * Whoever, with unlawful or fraudulent intent, transports in interstate or foreign commerce any falsely made, forged, altered, or counterfeited securities, knowing the same to have been falsely made, forged, altered, or counterfeited * * * (s)hall be fined not more than $10,000 or imprisoned not more than ten years, or both."

2. 18 U.S.C. § 2312 provides:

"Transportation of stolen vehicles.

"Whoever transports in interstate or foreign commerce a motor vehicle or aircraft, knowing the same to have been stolen, shall be fined not more than $5,000 or imprisoned not more than five years, or both."

3. This is the entire colloquy on this issue which took place on the cross-examination of Mr. Powers by the defendant.

"Q. You don't know whether there was a bank in Johnson City by that name or not, do you? A. No sir. We took the check on a recommendation from a Mr. Jenkins.

"Q. Did it make any difference to you whether there was one over there by that name or not? A. Sure did. We needed our money.

"Q. Sure did. A. Uhuh.

"Q. Was it logical that you would have checked on a man that you didn't

know to see whether he had any money in that bank or not? A. If it had not been for the recommendation of Mr. Jenkins, we probably would have checked.

"Q. Recommendation of what? A. Mr. Jenkins.

"Q. Who is Mr. Jenkins? A. He runs a fruit stand or vegetable stand down here.

"Q. What recommendation did he give you? A. He said he knew you and said the check would be all right.

"Q. He said he knew me and the check would be all right? A. Uhuh.

"Q. Did you leave Glover Motors to go over to see this man? A. I didn't. Mr. Isley did, I think.

"Q. Didn't he come over to your office at all? A. Yes sir, he did.

"Q. At that time? A. Yes sir, he did. On Saturday.

"Q. And what did he tell you? A. He said you were all right.

"Q. That it was all right. How long did you know Mr. Jenkins? A. I knew of him since I have been in Asheville.

"Q. Did he say he knew me? A. Yes sir, he did.

"Q. Why did you send for Mr. Jenkins to see if he knew me? A. Because we don't let strangers go off with automobiles, with checks, unless we know something about them.

"Q. How much easier would it have been to call the bank and find out if I had funds there?"

heavily on the earlier decision of this court in Greathouse v. United States, 4 Cir., 1948, 170 F.2d 512, where the defendant signed several checks "Woodruff Motor Sale, Inc., J. W. Greathouse." While in that case the corporation was fictitious, and neither it nor the defendant had an account at the bank on which the check was drawn, the court's opinion, by Judge Soper, pointed out that the name J. W. Greathouse, which the defendant used, was his own true name. It was held that:

> " * * * the charge of forgery in this case is not sustained by the fact that the defendant, with intent to defraud, drew the checks *in his own name* upon a bank in which he had no funds, or that he signed the name of Woodruff Motor Sale, Inc., whether that was the name in which he did business, as he claimed, or was merely the name of a non-existent corporation, as indicated by other testimony." 170 F.2d 512, 514. (Emphasis supplied)

In the course of the opinion it was also said:

> " * * * It is well established that forgery contemplates a writing which *falsely purports to be the writing of another person* than the actual maker. Hence it is not forgery for one, with intent to defraud, to issue a check in his own name on a bank in which he has no funds, and it is not a violation of the statute in question to cause such a check to be transported in interstate commerce." *Ibid.* (Emphasis supplied.)

In the instant case, the defendant, Euel Jackson Cunningham, in the presence of the Glover Motor Company's salesman, signed the check "R. F. Cunningham."

Unlike the defendant in Greathouse who signed his own name, Cunningham passed himself off as another person, namely R. F. Cunningham; his writing falsely purported to be the writing of R. F. Cunningham.

Decisions dealing with the question as to whether forgery may be committed by one signing an assumed or fictitious name are said to fall into two general categories.[4] As stated in the annotation at 49 A.L.R.2d 852, 854:

> " * * * Under the broad definition, forgery may be committed by the use of a fictitious name, with intent to defraud, so long as the instrument in question has a sufficient appearance of validity upon its face to enable it to be used to the prejudice of another, while under the narrow definition, the name signed to the instrument must purport to be the signature of some person other than the one actually signing it."

Greathouse, it is said, represents the "narrow," rather than the "broad," rule of forgery. As the basis for such classification of Greathouse, emphasis is put upon certain language in that opinion:

> " * * * forgery may exist even if the name used be an assumed or fictitious one; Lyman v. State, 136 Md. 40, 109 A. 548, 9 A.L.R. 401 and note. But this rule is properly applicable only when the writing is issued as the writing of the fictitious individual and not when the name is signed by the defendant himself under the pretense that he has been authorized by an existing person to sign his name." 170 F.2d 512, 514.

▮ When we reversed Greathouse's conviction, it was because, as we viewed the facts, the defendant had merely misrepresented the extent of his authority

---

4. An annotation at 49 A.L.R.2d 852 discusses this subject and treats many of the decisions. Leading cases applying the "broad rule" are Rowley v. United States, 8 Cir., 1951, 191 F.2d 949 and Milton v. United States, 1940, 71 App. D.C. 394, 110 F.2d 556. Since the appearance of the annotation, the "narrow rule" has been followed in LaFever v. United States, 7 Cir., 1958, 257 F.2d 271, as well as in Hubsch v. United States, 5 Cir., 1958, 256 F.2d 820, as to the count involving the check given at the hospital but not as to the count based on the check given for the Masonic ring.

but had not used a false name. While such conduct may well constitute a false pretense, subject to state prosecution, *it is not forgery.*

■ However, the annotator, at 49 A.L.R.2d 852, 854, goes further and says: "* * * under the broad definition forgery may be committed by signing the name of a fictitious person in the presence of the person defrauded, the other requisites for forgery under such definition being present, *while under the narrow definition, such is not the case.*" (Emphasis supplied.)

Although this formulation would absolve the defendant here, we do not think that Greathouse supports it. On the contrary, Greathouse is entirely consistent with a finding of forgery in this case, since it decided merely that one signing his own name may not be held for forgery, notwithstanding a misrepresentation as to his authority. In any event, we do not subscribe to a rule so narrow as to exonerate from liability as a forger under § 2314 one who signs a name other than his own with fraudulent intent.

■ The second contention of the defendant is that the record furnishes no basis for finding that he caused the check to be transported in interstate commerce.[5] This argument is derived from the following facts. The defendant gave the forged check, drawn on the Home National Bank, Johnson City, Tennessee, to the Glover Motor Company on a Saturday. On the following Monday morning, a telephone call was made to Johnson City, Tennessee, and the company discovered that there was no Home National Bank. The check was subsequently deposited and forwarded to the Hamilton National Bank in Johnson City. In these circumstances, defendant insists that he did not cause the check to be sent in interstate commerce to the Hamilton National Bank, that the "chain of causation is completely broken by the knowledge of the company and the bank at the time the check was forwarded to a bank on which it was not drawn, and being sent to a place where there was no bank in the name of the drawee bank."

This argument is completely lacking in merit and requires no extended treatment. By his acts, the defendant set in motion the chain of events that led to the transportation of the check in interstate commerce. The language of United States v. Sheridan, 1946, 329 U.S. 379, 391, 67 S.Ct. 332, 338, 91 L.Ed. 359 in which the Court dealt with a similar contention, is apt here:

"A word will dispose of the idea that Sheridan did not 'cause' the transportation. Certainly he knew the checks would have to be sent to the Missouri bank for collection. Given the proven forgery and uttering, no other conclusion would be possible. Necessarily, too, it would follow he intended the paying bank to send the checks there for that purpose. He knew they must cross state lines to be presented. One who induces another to do exactly what he intends, and does so by defrauding him, hardly can be held not to 'cause' what is so done."

It was readily foreseeable that in an effort to clear the check it might be sent to a bank other than the fictitious Home National Bank; thus the developing events do not make the defendant any less the cause of the transporting.

### The Second Count—Transportation of the Stolen Vehicle

■ Defendant's final contention, directed to the second count, is that the evidence was insufficient for a finding of interstate transportation of the automobile under 18 U.S.C. § 2312,[6] and that submission to the jury was error.

---

5. Although the language of 18 U.S.C. § 2314 expressly prohibits only the transporting of forged securities in interstate commerce, the prohibition covers the case of one who *causes* the forged securities to be transported in interstate commerce as well. See, e. g., Pereira v. United States, 1953, 347 U.S. 1, 74 S.Ct. 358, 98 L.Ed. 435.

6. See note 2, supra.

Defendant obtained the car illegally from the Glover Motor Company, Asheville, North Carolina, on October 26, 1957, and it was last seen in North Carolina in his possession. It was found, apparently abandoned, in South Carolina, on April 18, 1958, where it had evidently been for "quite a while," since the sheriff who discovered the automobile there testified that small bushes and grass had grown up around the car as high as six or seven inches. There was no evidence suggesting that anyone other than the defendant moved, or had any opportunity or motive to move, the automobile across the state line. We think that the evidence was sufficient to justify submission of the issue to the jury.

Affirmed.