**Irvin HALL, Appellant,**

v.

**UNITED STATES of America, Appellee.**

**No. 18420.**

United States Court of Appeals
Eighth Circuit.

Feb. 8, 1967.

**604**

David G. Dempsey, Clayton, Mo., filed brief and made argument for appellant.

Walter G. Riddick, Asst. U. S. Atty., Little Rock, Ark., for appellee, and Rob-ert D. Smith, Jr., U. S. Atty., Little Rock, Ark., on the brief.

Before VAN OOSTERHOUT, GIBSON and HEANEY, Circuit Judges.

HEANEY, Circuit Judge.

 Appellant Irvin Hall appeals from his conviction under an indictment charging him with transporting a forged check in interstate commerce in violation of Section 2314, Title 18, United States Code.[1]

The Indictment returned on February 14, 1966, charged:

"That on or about November 16, 1965, IRVIN HALL, also known as Irwin Hall, with unlawful and fraudulent intent, transported, and caused to be transported, in interstate commerce, from St. Louis, in the state of Missouri, to Little Rock, in Pulaski County, in the Western Division of the Eastern District of Arkansas, a falsely made and forged security, to wit, a check drawn on the First National Bank, St. Louis, Missouri, Account No. 40–7768–9, dated November 11, 1965, in the amount of $890.00 payable to Howard Schnall, and signed John Schwartz, and he, the said IRVIN HALL, also known as Irwin Hall, then knew said check to have been falsely made and forged, thereby violating Section 2314, Title 18, United States Code."

1. The pertinent text is as follows:
"Whoever, with unlawful or fraudulent intent, transports in interstate or foreign commerce any falsely made, forged, altered, or counterfeited securities or tax stamps, knowing the same to have been falsely made, forged, altered, or counterfeited; or * * *.
"Shall be fined not more than $10,000 or imprisoned not more than ten years, or both."
Section 2311 defines the term "securities" as including checks.
The language in § 2314 covers the case in which a defendant transports or *causes* to be transported forged instruments in interstate commerce. Explaining this interpretation, the Court in Baty v. United States, 275 F.2d 310 (9th Cir. 1960) said:
"Prior to 1948, the words, 'or causes to be transported,' appeared in the section immediately after the word 'transports.' The reviser's note explains that the deletion was made possible by a change in the definition of a principal, which as amended now reads:
'Whoever willfully causes an act to be done which if directly performed by him or another would be an offense against the United States is punishable as a principal.' 18 U.S.C. § 2(b)."
See Pereira v. United States, 347 U.S. 1, 8, 74 S.Ct. 358, 98 L.Ed. 435 (1954); Amer v. United States, 367 F.2d 803, 804 (8th Cir. 1966); Popeko v. United States, 294 F.2d 168 (5th Cir. 1961).

The appellant waived a jury trial and was tried by the District Court. The Government's testimony showed that the appellant, using the name Howard I. Schnall, opened a checking account with the First National Bank of St. Louis, Missouri, with a $200.00 cash deposit, on November 12, 1965, and was given printed checks. Four days later, he opened a $10.00 savings account in the name of Hank Schnall with the Commonwealth Savings and Loan Association of Little Rock, Arkansas. Later the same day, he made another deposit with Commonwealth of $10.00 in currency and a $890.00 check (using one of the printed checks supplied him by the Missouri bank) drawn by John Schwartz on the Missouri bank payable to Harry Schnall and endorsed by the payee, Harry Schnall and Hank Schnall. All the names used by the appellant were fictitious. The check was accepted for deposit by Commonwealth and put through normal channels, i. e., to the local bank, who forwarded it to St. Louis, from which it was returned a week or ten days later marked "No Account." The appellant followed the same or nearly the same procedure with four other banking institutions in Little Rock.[2] The appellant was arrested two or three hours after depositing the first check. None of the financial institutions suffered any loss as a result of the transactions.[3]

At the close of the Government's testimony, the appellant moved to dismiss the indictment on the grounds that the proof did not conform to the indictment, and that no forgery on the part of the defendant had been proved. This motion was denied by the court.[4]

The appellant then testified on his own behalf asserting that he had not intended to make withdrawals on any of the accounts until his father had sent him sufficient money to cover all of the checks he had written on the First National Bank of St. Louis, and that he had forgotten or became confused as to the name he had used in opening the St. Louis account. The trial court rejected the appellant's defenses and found him guilty.[5]

The appellant challenged the validity of the indictment on the ground that there was no evidence to support the indictment or judgment that the check was transported from St. Louis, Missouri, to Little Rock, Arkansas.

2. Some of the other banks took the checks for collection only.

3. It is not necessary to allege or prove that money, or anything of value was actually received in exchange for the forged instrument. United States v. Jenkins, 347 F.2d 345 (4th Cir. 1965); United States v. Rader, 185 F.Supp. 224, 230 (W.D.Ark. 1960), aff'd, 288 F.2d 452 (8th Cir. 1961); see Paul v. United States, 79 F.2d 561 (3d Cir. 1935).

4. Inferentially, the appellant challenged the sufficiency of the indictment by his motion following the presentation of the Government's testimony. Although we are unable to ascertain the precise nature of the objection, we have treated it as raising the issues of "variance" and "sufficiency." Since the indictment fairly informed the appellant of the charge and was specific enough to avoid his being tried again for the same crime, it meets the test of "sufficiency" required by this court. Harris v. United States, 288 F.2d 790, 793 (8th Cir. 1961); Risken v. United States, 197 F.2d 959 (8th Cir. 1952); Hewitt v. United States, 110 F.2d 1 (8th Cir. 1940). The "variance" issue is treated in the body of the opinion.

In its brief, the Government admitted that it customarily charges a defendant with transporting a security from the locality where it is deposited to the place where the drawee bank is located, but here, for unexplained reasons, the indictment was drawn backwards. Nevertheless, *it contended that the check did*, in fact, move from St. Louis to Little Rock, as alleged, and that this trip took place after the First National Bank of St. Louis marked it "No Account" and returned it to Little Rock.

In oral argument, the appellant answered this contention by asserting that the check ceased to be a security when it was marked "No Account" by the Missouri bank and returned to Arkansas— that on the return trip, it was nothing but a scrap of paper.

■ In our judgment, the technical[6] argument made by the appellant is met by the technical answer of the Government. By depositing the check with the Arkansas bank, the appellant set in motion the events which led to the round-trip of the check. The check was worthless when accepted for deposit, worthless when sent from Arkansas to Missouri for collection, and worthless when marked "No Account" and returned to the Commonwealth Savings and Loan Association at Little Rock, Arkansas. Nonetheless, it was a security throughout.

The language of the Supreme Court in United States v. Sheridan, 329 U.S. 379, 391, 67 S.Ct. 332, 91 L.Ed 359 (1946), bears on this problem.

"Drawing the check upon an out-of-state bank, knowing it must be sent there for presentation, is an obviously facile way to delay and often to defeat apprehension, conviction and restoration of the illgotten gain. There are sound reasons therefore why Congress would wish not to exclude such persons * * *.

"A word will dispose of the idea that Sheridan did not 'cause' the transportation. Certainly he knew the checks would have to be sent to the Missouri bank for collection. Given the proven forgery and uttering, no other conclusion would be possible. Necessarily, too, it would follow he intended the paying bank to send the checks there for that purpose. He knew they must cross state lines to be presented. One who induces another to do exactly what he intends, and does so by defrauding him, hardly can be held not to 'cause' what is so done." See United States v. Taylor, 217 F.2d 397 (2d Cir. 1954).

It is not an extension of the *Sheridan* doctrine to find that the appellant was as aware that the Missouri bank would return the check to the Arkansas Savings and Loan Association marked "No Account," as he was aware that the check would be sent to the Missouri bank for collection.

Even though the appellant's argument is thus answered, we should also determine whether there was substantial prejudice to his rights caused by the alleged variance.[7]

■ The indictment, while inartistically drawn, described the specific check, giving the drawer and payee's name, the check number, the amount of the check, the location of the drawee bank, and the date the check was presented for deposit. The proof conformed to the allegations in each particular. Interstate commerce, an essential element of the crime, was alleged and proved. The appellant has not shown that actual prejudice resulted from the alleged misstatement of the direction in which the check moved in interstate commerce. There is also no showing that he was surprised or unable to properly prepare a defense to the accusation, or that the movement in

---

6. "Technical" has been defined as something "immaterial, not affecting substantial rights, without substance." BLACK, LAW DICTIONARY (4th ed. 1951).

7. Rule 52(a) of the Federal Rules of Criminal Procedure states: "Any error, defect, irregularity or variance which does not affect substantial rights shall be disregarded."

interstate commerce from Missouri to Arkansas constitutes a separate crime for which he may be separately tried.

The appellant cites two cases to support his position: Kotteakos v. United States, 328 U.S. 750, 66 S.Ct. 1239, 90 L.Ed. 1557 (1946) and Call v. United States, 265 F.2d 167 (4th Cir. 1959).

In *Call,* an essential element of the crime charged in the indictment was that the defendant have direct knowledge of misrepresentations made by a third party to the Government. Since there was a total lack of proof of such knowledge, the Court ordered a jury verdict reversed. We find nothing in *Call* to support the appellant.

In *Kotteakos,* the Supreme Court found that substantial prejudice resulted to a single defendant when he and thirty-five others and eight separate conspiracies were intertwined under a single general indictment, thus (1) making it impossible to adequately prepare a defense, (2) prohibiting the trial court from giving required precautionary instructions, and (3) confusing the jurors to such an extent that they subconsciously transferred guilt from person to person or from conspiracy to conspiracy. Nothing comparable was brought to our attention in the present case.

In Berger v. United States, 295 U.S. 78, 82, 55 S.Ct. 629, 630, 79 L.Ed. 1314 (1935), discussed and distinguished in *Kotteakos,* the Court said:

"The true inquiry, therefore, is not whether there has been a variance of proof, but whether there has been such a variance as to 'affect the substantial rights' of the accused. The general rule that allegations and proof must correspond is based upon the requirements (1) that the accused shall be definitely informed as to the charges against him, so that he may be enabled to present his defense and not be taken by surprise by the evidence offered at trial; and (2) that he may be protected against another prosecution for the same offense."

In the present case, there is no evidence that the rights of the defendant at trial were substantially affected as a result of the alleged variance. Indeed, there is no showing that his rights were affected in any manner whatsoever.

As a second ground for reversal, the appellant urges that there was no proof that Commonwealth Savings and Loan Association relied on the name "Hank Schnall" or "John Schwartz" or any character or personality associated with either name in accepting the check for deposit, and that in the absence of such proof, there was no forgery within the intent of the statute. More properly stated, the question is: Given the interstate transportation of the check and the necessary fraudulent intent, is the use of fictitious names as drawer, payee and endorser in this case sufficient to make the check a falsely made or forged security within the meaning of § 2314?

While the courts are in general agreement that the use of a fictitious name may constitute a false making or forgery under § 2314,[8] there is a conflict about the circumstances under which this is true. See, e. g., United States v. Turner, 7 Pet. 132, 136, 8 L.Ed. 633 (1833); Kitchens v. United States, 272 F.2d 757 (10th Cir. 1959), cert. denied 362 U.S. 942, 80 S.Ct. 809, 4 L.Ed.2d 772 (1960); Hanson v. United States, 271 F.2d 791 (9th Cir. 1959); Jones v. United States, 234 F.2d 812 (4th Cir. 1956); Milton v. United States, 71 App.D.C. 394, 110 F.2d 556 (1940); Buckner v. Hudspeth, 105 F.2d 393 (10th Cir. 1939); Meldrum v. United States, 151 F. 177 (9th Cir. 1907); Maloney v. State, 91 Ark. 485, 121 S.W. 728 (1909); 62 W.Va.L.Rev. 393 (1960); 72 Harv.L.Rev. 566 (1959); 37

---

8. Section 2314 has been held not to cover the transportation of checks drawn by the maker in his own name upon an existing bank in which he has no funds. Marteney v. United States, 216 F.2d 760, 763 (10th Cir.1954); Martyn v. United States, 176 F.2d 609 (8th Cir. 1949); Wright v. United States, 172 F.2d 310 (9th Cir. 1949); Greathouse v. United States, 170 F.2d 512, 514 (4th Cir. 1948).

N.C.L.Rev. 200 (1959).[9] Decisions dealing with the question as related to forgery are said to fall into two general categories, depending on whether one accepts a broad or narrow definition of that term. As stated in the annotation at 49 A.L.R. 2d 852, 854:

"* * * Under the broad definition, forgery may be committed by the use of a fictitious name, with intent to defraud, so long as the instrument in question has a sufficient appearance of validity upon its face to enable it to be used to the prejudice of another, while under the narrow definition, the name signed to the instrument must purport to be the signature of some person other than the one actually signing it. Thus under the broad definition, forgery may be committed by signing the name of a fictitious person in the presence of the person defrauded, the other requisites for forgery under such definition being present, while under the narrow definition, such is not the case."

The so-called broad view is expressed in Cunningham v. United States, 272 F.2d 791 (4th Cir. 1959). There the defendant, Euel Cunningham, purchased a car in North Carolina making payment with a check drawn on a nonexistent Tennessee bank, signing the check "R. F. Cunningham," and accepting a bill of sale in the name of "Ronald F. Cunningham." The Court held that forgery was committed by signing a fictitious name, with intent to defraud, to a security which had a sufficient appearance of validity upon its face to enable it to be used to the prejudice of another. The Court, in adopting the so-called "broad rule," quoted extensively from the above A.L.R.2d annotation and at page 794 stated:

"* * * * we do not subscribe to a rule so narrow as to exonerate from liability as a forger under § 2314 one who signs a name other than his own with fraudulent intent."

In reaching its decision, the Fourth Circuit cited Rowley v. United States, 191 F.2d 949 (8th Cir. 1951) as precedent for their result.[10] In Rowley, cashier's checks were stolen from an Iowa bank. The checks were duly signed and issued, but did not bear the name of a payee or endorser. After the defendant gained possession of the checks in Missouri, he wrote a fictitious name as payee on the checks and then transported them in interstate commerce. Judge Gardner, in affirming the decision of the lower court finding the defendant guilty, said:

"The information is couched in the language of the statute. Section 2314, and Section 2(b), Title 18 U.S.Code. The Act does not define forgery but according to Blackstone's definition, which is cited by defendant, it may be defined as 'The fraudulent making or alteration of a writing to the prejudice of another man's rights.' The information in effect charges that after these securities came into the hands of the defendant he altered them by inserting in the blanks, in his own handwriting, the fictitious name 'Lenn E. Allen.' This was done with the manifest intent to defraud and he thereafter transported them in interstate commerce. * * * it is well settled that the crime of forgery may be committed by the signing of a fictitious or as-

---

9. The note writer there states that although the test applied in courts following the narrow view is in accord with the technical rules of forgery and valid, an area already beset with technicalities and dubious distinctions should not be further complicated by revitalizing a test which originated in the days when the forgery was a capital offense.

10. "An annotation at 49 A.L.R.2d 852 discusses this subject and treats many of the decisions. Leading cases applying the 'broad rule' are Rowley v. United States, 8 Cir., 1951, 191 F.2d 949 and Milton v. United States, 1940, 71 App.D.C. 394, 110 F.2d 556. Since the appearance of the annotation the 'narrow rule' has been followed in LaFever v. United States, 7 Cir., 1958, 257 F.2d 271, as well as in Hubsch v. United States, 5 Cir., 1958, 256 F.2d 820, as to the count involving the check given at the hospital but not as to the count based on the check given for the Masonic ring." Cunningham v. United States, 272 F.2d 791, 793, n. 4.

sumed name, provided, of course, that the instrument as so completed is made with intent to defraud." Id. at 950.

The appellant relies on two Fifth Circuit cases, supposedly expressing the narrow view, to support his position. The first is Hubsch v. United States, 256 F.2d 820 (5th Cir. 1958).[11]

In *Hubsch*, the defendant was charged under § 2314 on two separate transactions. In one, he received treatment at a Florida hospital where he was registered under the name of Alfred Weinstein. When he left the hospital, he gave a check signed "A. A. Weinstein" drawn on a Georgia bank. The check was returned "unable to locate." The Court held that the defendant should have been acquitted, saying:

"There is nothing in the record to show that there was any reliance placed by the Halifax District Hospital upon the name of Weinstein or upon any character or personality associated with the name. It does not appear that the Hospital would have declined to accept the check had it been signed by Hubsch in his own name or in any other name. So far as appears, the name Weinstein on the check to the Hospital was an alias and nothing more." Id. at 824.

In the other, the defendant purchased a Masonic ring at a Florida jewelry store. He produced several Masonic cards from Atlanta with the name "Weinstein" on them. The jeweler then accepted a check drawn on a Georgia bank. As to this count, the Court said:

"* * * Hubsch negotiated for the purchase of a Masonic ring and represented himself as Weinstein, a holder of several Masonic cards from Atlanta. It may then be that Hubsch created a fictional personality of Weinstein, the Mason who desired to purchase the Masonic ring, and on the faith and credit of a check purporting to be that of Weinstein the Mason the check was accepted. If such be the fact then, we conclude, there had been a forgery." Ibid.

Edge v. United States, 270 F.2d 837 (5th Cir. 1959), is said to be an extension of the view laid down in *Hubsch*. In that case, the defendant registered in a Georgia hotel under the fictitious name of "R. E. Spaine." A month later, he returned and registered under the same name. When he checked out of the hotel, he gave the manager a check for $75.00. The check was payable to the hotel and was drawn on a Washington, D. C., bank, in which there was no account. The Court said:

"The evidence shows, within the positive rule set forth in *Hubsch*, that *Edge*, with intent to defraud, created

---

11. The Court relied on King v. Dunn, 1 Leach's Crown Cases 68 (1765), and Queen v. Martin, 5 Q.B.D. 34 (1879).

In *Dunn*, the Court imposed the death sentence on Elizabeth Dunn for forging the name "Mary Wallace" to a promissory note for three pounds, eighteen shillings and six pence (mercy was subsequently recommended). The money was advanced to her only after she produced a probate certificate indicating that she was Mary Wallace. The Court said:

"* * * in all forgeries the instrument supposed to be forged must be a false instrument in itself; and that if a person give a note entirely as his own, his subcribing it by a fictitious name will not make it a forgery, the credit being there wholly given to himself, without any regard to the name, or without any relation to a third person * * *."

"* * * in the present case no credit was given to the prisoner herself personally, for she was totally unknown both to Hooper and his clerk; * * * It was not till she brought the probate, * * * that he would advance the money to her."

In the second case, defendant, Robert Martin, signed a check as "William Martin," in the presence of payee, an acquaintance of twenty years, who pocketed the check without looking at it. The Court held Martin not guilty of forgery on the ground he had not obtained credit with payee by substituting the name of "William" instead of "Robert." He would have received credit had he signed his own name. The check was taken as that of the person who had just been seen to sign it, and who was an acquaintance of twenty years.

a fictional personality under the name of 'R. E. Spaine.' The check was cashed after Edge's second stay at the hotel. On both occasions when Edge was at the hotel he spoke with the manager, Mr. Holladay, representing that he was 'R. E. Spaine' of Washington, D. C. Edge told Mr. Holladay that he (R. E. Spaine) had been in Florida with his children and had spent some time at Daytona Beach with his family. The manager's testimony leaves no doubt that he cashed the check because of his *reliance* upon the reality, the genuineness, the integrity of the fictional 'Spaine.'" Id. at 838, 839.

Even though the appellant relies on Fifth Circuit cases to support his contention, he did not cite *Edge* in his brief. It was cited, and we believe properly, by the Government to sustain the appellant's conviction. There is little or no difference in the factual situation presented in *Edge* and that presented here. If we considered reliance as a necessary element of the crime charged, there would seem to be as much reason for the Commonwealth Savings and Loan Association to rely on "Schnall" as there was for the Georgia hotel to rely on "Spaine." We question, however, the wisdom of determining the defendant's guilt or innocence on the basis of the reliance established here or in *Edge.*

The second case relied upon by the appellant is Stinson v. United States, 316 F.2d 554 (5th Cir. 1963). There the Court further distinguished *Hubsch* and *Edge,* and held that when the indictment charged a defendant with interstate transportation of a falsely made rather than a forged security, it was not necessary to establish that there had been reliance upon any personality associated with the fictitious name to find him guilty. In reaching this conclusion, the Fifth Circuit, relying on Pines v. United States, 123 F.2d 825 (8th Cir. 1941), indicated that falsely made and forged checks are not homogeneous and are not to be synonymously construed.

Accord, Mellor v. United States, 160 F.2d 757 (8th Cir. 1947); United States v. Bales, 244 F.Supp. 166 (E.D. Tenn.1965); see Streett v. United States, 331 F.2d 151 (8th Cir. 1954); contra, Marteney v. United States, 216 F.2d 760, 763 (10th Cir. 1954); Greathouse v. United States, 170 F.2d 512, 514 (4th Cir. 1948). If it is alleged that the checks are falsely made and forged, then forgery must be proved, but if only false making is alleged, then forgery need not be proved and reliance is unnecessary.

In *Pines,* the defendant was charged with transporting in interstate commerce a falsely made, forged, altered and counterfeited security (a traveler's check). Judge Gardner, speaking for this Court, said:

"* * * Manifestly, the words 'altering' and 'counterfeiting' could refer only to a crime based upon a pre-existing genuine instrument. Forgery, however, does not necessarily carry such presumption but indicates that there is a genuine or real obligor in existence whose obligation has been simulated. To 'falsely make' is a crime not of changing or forming an instrument to resemble an existing genuine instrument or to represent that it is the act of a genuine and existing obligor, but rather to make an instrument which has no original as such and no genuine maker whose work is copied, although in form it may resemble a type of recognized security. The allegations of each count refer to the Gotham Trust Company as fictitious. Defendant could not therefore construe any count as alleging a crime other than a 'false making.' While the statute is disjunctive, the various acts made criminal may be charged conjunctively without making the pleading duplicitous. Troutman v. United States, 10 Cir., 100 F.2d 628, Wolpa v. United States, [86 F.2d 35], supra; Crain v. United States, 162 U.S. 625, 16 S.Ct. 952, 40 L.Ed. 1097. * * * The charging of the various criminal acts in the conjunctive does not create a

new crime. Defendant must be found guilty of some act prohibited by the statute, and he is as fully informed, being charged with knowledge of the rule, as if each separate act were stated singly in a number of counts." [12] Id., 123 F.2d at 828.

As a result of Judge Gardner's decision in *Pines,* the position urged by the appellant is not supported by *Stinson.* For while this Court held in *Pines* that there is a difference in the evidence necessary to prove forgery and a false making, it disagreed with *Stinson* as to the effect of alleging a false making and forgery; and took the position that proof of either sustains a conviction whenever both are charged.

In the Fifth Circuit as a result of the decisions in *Edge* and *Stinson,* the difference between the "broad" and "narrow" views is now more theoretical than real. In that Circuit and in other jurisdictions following the narrow view, the results achieved under the broad rule will usually be obtainable by alleging and proving false making rather than false making and forgery or simply forgery.

■ Thus, even though our decision in the present case could well be based on *Edge* or *Stinson,* we believe that it is more consistent with a reasonable interpretation of § 2314 to support it with the reasoning set forth by Judge Gardner in *Rowley* and accepted by the Fourth Circuit in *Cunningham,* and hold that appellant violated § 2314 by signing fictitious names, with intent to defraud, to the check drawn on a St. Louis, Missouri, bank, which he presented to an Arkansas Savings and Loan Institution for deposit.

Affirmed.

---

12. In Fredrick v. United States, 163 F.2d 536, 544 (9th Cir. 1947), the Court quoted *Pines* with approval and stated:

"* * * We perceive no sound reason why the doing of the prohibited thing in each and all of the prohibited modes may not be charged in one count, so that there may be a verdict of guilty upon proof that the accused had done any one of the things constituting a substantive crime under the statute. And this is a view altogether favorable to an accused, who pleads not guilty to the charge contained in a single count, for a judgment on a general verdict of guilty upon that count will be a bar to any further prosecution in respect of any of the matter embraced by it."