**UNITED STATES of America,
Plaintiff,**

v.

**John G. SEAY, Defendant.**

**Crim. No. 74–57–E.**

United States District Court,
E. D. Illinois.

Dec. 19, 1974.

Henry A. Schwarz, U. S. Atty., Jack A. Strellis, Asst. U. S. Atty., East St. Louis, Ill., for plaintiff.

Edward G. Maag, Belleville, Ill., for defendant.

## MEMORANDUM AND ORDER

FOREMAN, District Judge:

Defendant has waived trial by jury with the consent of the Government pursuant to Rule 23(a), Federal Rules of Criminal Procedure. This matter comes before the Court upon a stipulated statement of facts. Defendant has filed a motion to dismiss the indictment and a motion for judgment of acquittal. The indictment charges him with violating 18 U.S.C. § 2314 in that he caused to pass in interstate commerce a forged check payable to the order of John Seay in the amount of $1883. drawn upon the Southern Illinois National Bank and signed with the fictitious name "Gerald Thomas" as drawer of the check.

The facts, as stipulated, in relevant part, are, as follows:

On June 27, 1972, the defendant used his official position as an accounting officer of State Community College, East St. Louis, Illinois, to cause a check to be signed by proper college officials and drawn upon the State Community College Revolving Fund Account, Auxiliary Services Fund at the First National Bank, East St. Louis, Illinois, payable to "Arco Book Dist." in the amount of $1743. (hereinafter "Check No. 1") This check was not transported in interstate commerce. The next day the defendant opened an account at Southern Illinois National Bank in East St. Louis under the fictitious and assumed name of Arco Book Distributors (hereinafter "Arco"), having a fictitious address· of 829 Missouri Avenue, East St. Louis, Illinois. Gerald Thomas, the assumed and fictitious name used by defendant, was the authorized signatory for this account. The $200. initial deposit utilized to open this account was John Seay's personal funds.

On June 29, 1972, defendant deposited Check No. 1 in the Arco account at the Southern Illinois National Bank. The defendant, using the assumed and fictitious name of Gerald Thomas, endorsed the check at the time of the deposit.

On June 30, 1972, the Arco account had a balance of $1,893. Later, on July 3, 1972, the defendant drafted a check, (hereinafter "Check No. 2") payable to the order of John Seay in the amount of $1,883. drawn on the Arco account at the Southern Illinois National Bank, and defendant signed the fictitious and assumed name of Gerald Thomas thereto as drawer of the check. At the time Check No. 2 was drafted, there was a balance of $1,893. in the Arco account at the Southern Illinois National Bank. The defendant then deposited Check No. 2 in his personal account at the Gateway National Bank in St. Louis, Missouri. Shortly thereafter, Check No. 2 was transported from St. Louis, Missouri to East St. Louis, Illinois in normal banking channels.

On July 6, 1972, the Arco account at the Southern Illinois National Bank was debited $1,883. leaving a balance of $10. While $1,883. was debited from the account, no monies, funds or credits debited from the account ever left the Southern Illinois National Bank. The following day, the bank made a reverse entry for the Arco account. The credit balance in the account at the Southern Illinois National Bank was not less than $1,884.55 from July 10, 1972 through August 4, 1972. On August 4, 1972, the defendant made restitution of the funds by executing a draft and voucher drawn

upon the Arco account, signed Arco Book Dist., Gerald Thomas, John G. Seay, payable to William G. Matlack, a college official, in the amount of $1743.

Check No. 2, the only check to pass in interstate commerce, is the check which defendant is charged to have transported in interstate commerce in violation of 18 U.S.C. § 2314.

At the outset it is also important to recognize what this case is not. There is no indication that "Gerald Thomas" is an "alias" or a name by which the defendant is regularly called. See, e.g. Berry v. United States, 271 F.2d 775 (5th Cir. 1959). Nor is there any indication that the defendant represented any facts to the Gateway National Bank other than the information on the face of the check.

Defendant is charged with causing to be transported in interstate commerce a *falsely made security*. The Seventh Circuit recently held that the words "falsely made" and "forgery" as used in § 2314, are substantially synonymous. United States v. Johnson, 504 F.2d 622 (7th Cir. 1974). See also, Greathouse v. United States, 170 F.2d 512, 514 (4th Cir. 1948); Marteney v. United States, 216 F.2d 760, 763 (10th Cir. 1954).

There is a split of authority among the courts on this issue and other courts have held that these two terms are not synonymous. See, e.g. Stinson v. United States, 316 F.2d 554 (5th Cir. 1963); Pines v. United States, 123 F.2d 825 (8th Cir. 1941); United States v. Bales, 244 F.Supp. 166 (E.D.Tenn.1965). Thus, cases following this view cannot serve as precedent for the Government's position in this action.

The Court, of course, feels bound by the Seventh Circuit's recent pronouncements in *Johnson* and hence the issue becomes whether a check signed by the defendant with a fictitious name as drawer constitutes a "forged" check.

In dealing with the issue of whether the signing of a fictitious name constitutes a forgery, the decisions generally fall into two different categories depending upon whether one accepts the broad or narrow definition of that term. The annotation at 49 A.L.R.2d 852, at 854 states, as follows:

"The generally accepted rule is that forgery may be committed though the use of a fictitious name, . . . . Under the broad definition, forgery may be committed by the use of a fictitious name, to defraud, so long as the instrument in question has a sufficient appearance of validity upon its face to enable it to be used to the prejudice of another, while under the narrow definition, the name signed to the instrument must purport to be the signature of some person other than the one actually signing it."

The "broad rule" was applied in Cunningham v. United States, 272 F.2d 791 (4th Cir. 1959), where the defendant signed a fictitious name to a check as drawer, the Court held that forgery was committed by signing the fictitious name with intent to defraud where the check had sufficient appearance of validity upon its face to enable it to be used to the prejudice of another. The Eighth Circuit also has adopted the broad rule by affirming a conviction where the defendant wrote the fictitious name of a payee. Rowley v. United States, 191 F. 2d 949 (8th Cir. 1951). See also Hall v. United States, 372 F.2d 603 (8th Cir. 1967).

In United States v. Greever, 116 F. Supp. 755 (D.D.C.1953), another case which adopted the broad rule, Chief Judge Laws attempted to harmonize the "broad rule" and the "narrow rule" on the basis of the rationale expressed in Reg. v. Martin (1879), 14 Cox, Cr.Cas. 375, 5 Q.B.Div. 34. That latter case held that where the payee in accepting the check has relied upon and given credit to the person who presented the check and not the signature itself, there may be fraud and false pretenses, but there has been no forgery. It is only in a case where reliance is placed upon the signature as creating a valid obligation, not on the person who presents the check that forgery has been committed.

Defendant places very strong reliance upon three cases which he claims support the position that the signing of a fictitious name does not constitute a forgery. Greathouse v. United States, 170 F.2d 512 (4th Cir. 1948); Marteney v. United States, 216 F.2d 760 (10th Cir. 1954); Gilbert v. United States, 370 U. S. 650, 82 S.Ct. 1399, 8 L.Ed.2d 750 (1962).

In *Greathouse*, the defendant wrote several checks or bills of exchange. Each was payable to the defendant and signed "Woodruff Motor Sale, Inc., J. W. Greathouse". Greathouse was the true name of the defendant. In a subsequent re-examination of that decision, however, the Fourth Circuit noted:

> "When we reversed Greathouse's conviction, it was because, as we viewed the facts, the defendant had merely misrepresented the extent of his authority but had not used a false name. While such conduct may well constitute a false pretense, subject to state prosecution, it is not a forgery." Cunningham, *supra*, 272 F.2d at 793–794.

Thus, the decision in Greathouse is based upon a misrepresentation of authority and not upon the use of a fictitious name and, therefore, can not be precedent for the granting of defendant's motions in this case.

*Marteney* involved a warehouse receipt which falsely stated that 60,000 bushels of yellow milo were received from C. M. Henderson by the Garden Grain and Seed Company when, in fact, the company did not receive any milo in store from C. M. Henderson and the company on the relevant date was short such grain in an amount exceeding 380,000 bushels. This case does not really support the defendant's position. That Court noted, as follows:

> "We haven't any doubt that an allegation charging the unlawful interstate transportation of a 'falsely made, forged, altered, or counterfeited security', purporting to be a warehouse receipt of the Garden Grain and Seed

Company, states an offense in the words of Section 2314, and that a sentence based upon a plea of guilty to an indictment in those words would not be vulnerable to collateral attack." (216 F.2d at 763).

The *Marteney* court, however, reversed the lower court's decision and remanded the action for a hearing pursuant to 28 U.S.C. § 2255, only because of the wording of the charge, since the particular charge in that case also alleged that the receipt was falsely made because the issuing warehouse did not have in storage the grain represented by the receipt. These words, the court decided, were critically intended to describe the nature of the document. "Plainly upon the face of the charges, the warehouse receipts were actually what they purported to be. Their falsity lies in the representation of facts, not in the genuineness of execution." (216 F.2d at 763–764).

In *Gilbert, supra*, the Supreme Court cited both the *Greathouse* and the *Marteney* decisions. It noted that the cases construing the words "forge" under the federal statutes have generally drawn a distinction between false and fraudulent statements and spurious or fictitious makings. The Court concluded: " 'Where the falsity lies in the representation of facts, not in the genuiness of execution,' it is not forgery." (370 U.S. at 658, 82 S.Ct. at 1404).

In the instant action, the Court believes that the falsity of Check No. 2 lies in the genuineness of its execution. There was no such corporation or individual as were listed as the drawer of the check. Therefore, the check could not have been genuine in its execution.

The Court concludes that the weight of authority and the better reasoning support the "broad rule" that an instrument is forged when it contains the name of a fictitious person as drawer. See e.g., Hall v. United States, 372 F.2d 603 (8th Cir. 1967); Jones v. United States, 234 F.2d 812 (4th Cir. 1956); Rowley v. United States, *supra*; Milton

v. United States, 71 App.D.C. 394, 110 F.2d 556 (1940); Buckner v. Hudspeth, 105 F.2d 393, 395 (10th Cir. 1939); United States v. Carney, 328 F.Supp. 960 (D.Del.1971). See also, 49 A.L.R.2d 852; Delmar Bank of University City v. Fidelity Deposit Co. of Md., 428 F.2d 32 (8th Cir. 1970); Ketchum v. United States, 327 F.Supp. 768 (D.Md.1970).

There is a Seventh Circuit decision which has been cited as favoring the "narrow rule". LaFever v. United States, 257 F.2d 271 (7th Cir. 1958). That decision is not completely clear because there had been no hearing in the district court and the *pro se* petition did not clearly delineate the factual allegations. One of the two cases cited in that opinion, moreover, stated: "And the signature of a fictitious name, with fraudulent intent, is as much a forgery as if the name used was that of an existing person. (citations omitted)." *Greever, supra,* 116 F.Supp. at 756. Thus, it is not at all clear that the Seventh Circuit by that opinion intended to adopt the narrow rule.

■ Accordingly, a check to which a fictitious name is affixed as drawer with the intent to defraud is a forged check within the meaning of § 2314.

■ Before the check can be determined to be a forged check, the defendant must have had an intent to defraud at the time he signed the fictitious name to the check. To commit the offense with which he is charged, the defendant must also have had an "unlawful or fraudulent intent" at the time he caused the check to be transported in interstate commerce.

■ The Court will first examine the intent at the time the check passed in interstate commerce. Defendant takes a very narrow view and claims that as to Check No. 2, he had no fraudulent intent, because there were sufficient funds in the drawee bank to cover the check. Thus, by this check no one would be defrauded.

This argument ignores the fact that the transportation of Check No. 2 was part of a scheme to defraud the State Community College. In a written statement the defendant admits "the whole purpose of the aforementioned scheme was to fraudulently convert funds of State Community College of East St. Louis, Illinois to my own personal use". The transportation of this check was an essential element in defendant's scheme to defraud. After depositing the funds in the bank account of Arco Book Company, defendant needed to transfer the funds to his personal account to make the money available for his personal use. Thus, Check No. 2 payable to John Seay was an integral step to complete this attempt to defraud. Accordingly, it cannot be said that the defendant's attempts to defraud the State Community College ended with the deposit of Check No. 1 in the Southern Illinois Bank. In reality, the transportation of Check No. 2 was an essential part of defendant's plan to defraud the State Community College.

Defendant contends that the third paragraph of § 2314, pursuant to which the Government is bringing this action, was not intended to cover a scheme to defraud such as the one in this case. He points out that the second paragraph of § 2314,[1] which makes illegal certain

---

1. The first three paragraphs of 18 U.S.C. § 2314 are as follows:

"Whoever transports in interstate or foreign commerce any goods, wares, merchandise, securities or money, of the value of $5,000 or more, knowing the same to have been stolen, converted or taken by fraud; or

Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, transports or causes to be transported, or induces any person to travel in, or to be transported in interstate commerce in the execution or concealment of a scheme or artifice to defraud that person of money or property having a value of $5,000 or more; or

Whoever, with unlawful or fraudulent intent, transports in interstate or foreign commerce any falsely made, forged, altered, or counterfeited securities or tax stamps, knowing the same to have been falsely made, forged, altered, or counterfeited;"

confidence game swindles, uses the language "scheme or artifice to defraud", while the third paragraph uses only the more general language "with unlawful or fraudulent intent". Defendant, thus, seems to contend that since Congress did not use the specific "scheme or artifice" language in the third paragraph, it evidences a Congressional intent to make punishable under the third paragraph only the transportation in interstate commerce of forged checks where the specific check was executed or forged with fraudulent intent. According to this argument, the transportation of a check for which there were sufficient funds on deposit would not constitute a violation of the statute, even if the check was a part of a scheme to defraud.

This argument, however, ignores the dates in which Congress enacted the various paragraphs of § 2314. Congress enacted the second paragraph of this section in 1956, while the third paragraph with its more general language was adopted by Congress at a much earlier time. Defendant's argument would have much greater plausibility if the two paragraphs had been enacted simultaneously. Since the second paragraph with the more specific language was enacted after the third paragraph, it is not fair to assume a congressional purpose to exclude from offenses punishable under the third paragraph those instances where a defendant causes a forged check to pass in interstate commerce pursuant to a scheme to defraud merely because in a subsequent adoption of another paragraph of the section, Congress used the words "any scheme or artifice to defraud, . . . ".

Moreover, the same reasoning compels the conclusion that when the defendant signed the fictitious name to the check, he had the intent to defraud. This check was an essential part of defendant's scheme to defraud the College and thus the signing of the fictitious name was done with the intent to defraud. Therefore, the Check No. 2 constitutes a forged check within the meaning of § 2314.

The Court concludes that in adopting the third paragraph of § 2314 Congress intended to make illegal the acts committed by this defendant.

Accordingly, defendant's motion to dismiss the indictment and his motion for a judgment of acquittal are hereby denied.

The Court hereby finds and adjudges the defendant guilty as charged. The Court also orders that a pre-sentence report and investigation be conducted. Defendant shall report to the United States Probation Office on or before December 27, 1974.